IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-2965 |
| v. | ) ) ) | District Judge Charles R. Norgle |
| DRIVE CONSTRUCTION, INC., | ) ) | Magistrate Judge Jeffrey I. Cummings |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion by plaintiffs – Trustees of the Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, Chicago Regional Council of Carpenters Apprentice and Training Program Fund, and Chicago Regional Council of Carpenters Supplemental Retirement Fund – to compel the disclosure of information related to alleged payments from defendant, Drive Construction, Inc. ("Drive"), to Eduardo Medina, a non-party witness. (Dckt. #80). Plaintiffs ask that the Court order either Drive or Drive's former superintendent, Raul Lovera, to disclose the source of the alleged payments.[1] Drive filed a response on July 1, 2021, (Dckt. #86), to which plaintiffs replied on July 8, 2021, (Dckt. #87). Lovera also filed a response to the motion, asking that the Court not only deny plaintiffs' motion but also award him the attorney's fees he incurred in defending against it. (Dckt. #89). Plaintiffs replied to this motion as well. (Dckt. #92). For the reasons set forth

---

[1] According to his response, Mr. Lovera's full name is Raul Lovera Rodriguez. (Dckt. #89). However, it appears that he most commonly goes by Raul Lovera. (Dckt. #89-1 at 9). For the sake of consistency with his deposition and both parties' briefs, the Court will refer to him as "Lovera."

1

below, plaintiffs' motion to compel (Dckt. #80) is granted as to both Drive and Lovera. Lovera's request for attorney's fees is denied.

I.     FACTUAL BACKGROUND

Plaintiffs are jointly administered benefit funds created under collective bargaining agreements between the Chicago Regional Council of Carpenters ("Union") and various associations and employers in the construction industry. Plaintiffs filed a complaint against Drive, a party to one such collective bargaining agreement ("CBA"), pursuant to 29 U.S.C. §1132 of the Employee Retirement Income Security Act. (Dckt. #1). The CBA between Drive and the Union obligates Drive to make monthly contributions to plaintiffs based on the hours of the type of work covered by the CBA that are completed by Drive employees. Plaintiffs allege that the records they received from Drive were inadequate because Drive paid numerous employees in cash and failed to record or report the payments, thus preventing plaintiffs from adequately calculating the benefits due under the CBA.

Eduardo Medina is a member of the Union. Lovera was a Drive project manager/superintendent who was responsible for "[s]cheduling and overseeing carpentry projects" and "for all carpentry jobs" between April 2016 and June 2019. (Dckt. #87-3 at 3). Medina testified that he was paid in cash by Lovera to work for Drive from November 2016 to October 2017 (a period that falls within the relevant audit period of January 1, 2016, through March 31, 2019). (Dckt. #86-2 at 5). He further testified that, during that time, he "was a carpenter more than anything else." (*Id.*). As additional evidence that Medina worked for Drive, plaintiffs present sixty-two pages of text messages between Medina and Lovera – who is also Medina's cousin – in which Lovera repeatedly directs Medina to appear at Drive construction sites. (Dckt. #80-3). Plaintiffs also point to a settlement agreement between Drive and the

Union, whereby Drive paid $37,500 to settle a dispute as to Medina's wages and benefits, (Dckt. #80-6), among other evidence. Because Medina was a Union carpenter and never appeared in Drive's payroll records despite his testimony that he was employed by Drive during the audit period, plaintiffs argue that the source of his payments is "a pivotal issue in this case." (Dckt. #80 at 2).

In response, Drive maintains that it never employed Medina and that any testimony to the contrary was motivated by a desire "to try to get additional union benefits." (Dckt. #86 at 1). In support of this assertion, Drive cites an employment application dated September 17, 2017, in which Medina indicated that he had never worked for Drive. (Dckt. #86-4).[2] Drive also asserts that Lovera did not have the authority to hire employees on behalf of Drive. (Dckt. #86 at 2). As an explanation for the text messages in which Lovera directed Medina to report to Drive construction sites, Drive alleges that Medina routinely ran errands for Lovera in Lovera's personal capacity. (*Id.* at 2-3). As to the settlement agreement, Drive notes that the agreement contained a non-admission clause and was for less than half of what was initially sought by the Union. (*Id.* at 6). Drive further asserts that the Union instigated the present audit in retaliation for Drive's refusal to pay Medina $80,000 for work he did not do. (*Id.* at 4).

Lovera, a non-party, also filed a response to plaintiffs' motion to compel. In it, he echoes Drive's assertion that he did not have the authority to hire employees and was not responsible for paying Drive's employees. (Dckt. #89 at 3). Lovera also argues that his deposition testimony was adequate because he "answered all questions asked of him" regarding his responsibilities at Drive and his knowledge of Drive. (Dckt. #89 at 3).

---

[2] Medina claims that Lovera encouraged him to fill out the application in this way because Medina was a "ghost worker" for Drive at the time. (Dckt. #86-2).

## II. LEGAL STANDARD

! A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party (or, under limited circumstances, a non-party) fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018). Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). Discoverable information is not limited to evidence admissible at trial. Fed.R.Civ.P. 26(b)(1).

## III. ANALYSIS

Plaintiffs seek to compel Drive and Lovera to disclose the source of payments allegedly made to Medina for the work he allegedly performed for Drive. (Dckt. #87 at 1). They argue that this information, if it exists, would be responsive to plaintiffs' Interrogatory No. 10, the follow-up letter sent by plaintiffs on April 19, 2021, and the questions posed to Lovera during his deposition. (Dckt. #80-7).

### A. Plaintiffs have met their burden of showing that Drive must provide a supplemental response to plaintiffs' Interrogatory no. 10.

Each interrogatory posed to a party "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(3). To this end, it is well-settled that a responding party "must provide true, explicit, responsive, complete, and candid answers to interrogatories." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D.Pa. 1996); *Brock v. Hooker Chem. & Plastics Corp.*, No. 83 C 8383, 1985 WL 2120, at *1 (N.D.Ill. July 24, 1985)

(same). Plaintiffs' Interrogatory No. 10 asked Drive to identify "any bank account owned and/or used by the company during the audit period." (Dckt. #80-7 at 2). In an April 19, 2021 follow-up letter, plaintiffs asserted that Drive's response to Interrogatory No. 10 was incomplete because Drive identified only one bank account and Medina was never paid any wages from that account. Plaintiffs asked that Drive supplement its response by identifying "the account used by the company to compensate Mr. Medina for work performed on the seven projects he asserts he worked on for [Drive]." (*Id.* at 3). Although Drive supplemented its interrogatory answer to identify two additional accounts it "owned" but no longer used during the audit period, Drive maintains that it cannot provide the specified information regarding Medina because it never paid Medina wages from *any* account.

Rule 37(a)(3)(B)(iii) provides plaintiffs with the authority to move to compel Drive to produce a more responsive answer to Interrogatory No. 10. A court cannot, however, compel a party to produce what does not exist. *Amarei v. City of Chicago*, No. 13 C 2805, 2016 WL 3693425, at *4 (N.D.Ill. July 12, 2016). When a defendant denies knowledge of information sought, plaintiffs "may not successfully move to compel discovery on the basis of a mere suspicion that the producing party possesses additional information that it has failed to disclose." *Kendle v. Whig Enter., LLC*, 2:15-cv-1295, 2016 WL 898569, at *4 (S.D. Ohio Mar. 9, 2016). Instead, the moving part must present evidence that allows the court to make "a reasonable deduction" that information is being withheld. *Berkely*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2021 WL 4306159, at *1 (N.D.Ill. Sept. 22, 2021), *quoting Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008); *see also Susko v. City of Weirton*, 5:09-cv-1, 2011 WL 98557, at *4 (N.D.W.Va. Jan 12, 2011) (finding that the moving party must present "a colorable basis" for its belief that responsive information is being withheld).

When a moving party meets this standard, courts "may order discovery designed to test the sufficiency of [the producing party's] discovery efforts in order to capture additional relevant material." *Freedman v. Weatherford Int'l Ltd.*, No. 12 civ. 2121 LAK JCF, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014). For example, courts may order production of information or documents that the producing party claims do not exist or, alternatively, order a party to file a sworn certification attesting to its lack of information that is responsive to the discovery request. *See Hansen v. Country Mut. Ins. Co.*, No. 18 CV 244, 2020 WL 5763588, at *3 (N.D.Ill. Sept. 28, 2020) (requiring counsel to certify parties' compliance with discovery order, citing cases); *see also Couture v. Anderson*, Civ. No.10-5026, 2012 WL 369451, at *5 (D.S.D. Feb. 3, 2012) (ordering the production of a report that defense counsel had asserted, under pain of sanction, did not exist where defendant and a third-party plaintiff had repeatedly referred to the report in their depositions); *Allen v. Harrah's Entm't Inc.*, No. 204CV128, 2005 WL 1705629, at *3 (N.D.Ind. July 10, 2005) ("[I]n order to resolve the ambiguity created by the inconsistent statements of the plaintiffs and their counsel, each of the other individual plaintiffs shall either provide the requested documents within the time set forth below or submit a separate supplemental affidavit stating that the documents do not exist and explaining why each testified otherwise."); *LifeGoals Corp. v. Advanced Hair Restoration LLC*, No. C16-1733JLR, 2017 WL 6516042, at *4 (W.D.Wash. Dec. 19, 2017) (in light of court's skepticism that communications did not exist, plaintiff was directed to reexamine requests for production and turn over any requested documents); *Bays Exploration, Inc. v. PenSa, Inc.*, CIV-07-0754-D, 2009 WL 10674518, at *8 (W.D.Okla. May 27, 2009) (court directed defendant's counsel to "make a reasonable inquiry to ensure that further documents responsive to the discovery requests do not exist" due to court's skepticism that defendant's disclosure was adequate).

In this case, plaintiffs have met their burden to require a further response from Drive. In particular, the testimony of both Lovera and Medina supports plaintiffs' assertion that Medina was paid for work he performed on Drive's behalf during the time period covered by the audit.[3] Although the two men disagree on several matters, each corroborates the other's testimony in important ways.

First, both Lovera and Medina agree that Medina performed work for Drive's benefit on a number of specifically identified Drive projects. Medina testified that he worked for Drive from November 2016 through October 2017, (Dckt. #86-2 at 5), and that, during that time, he worked on Drive's Apostolic Church project, (*Id.* at 9), three Naval Base projects (Great Lakes, Decatur, and Cincinnati), (*Id.* at 10, 11, 21), the Metra project, (*Id.* at 15), the Win Café project, (*Id.* at 20), the Social Security project, (*Id.*), and a Drive project at Rockwell and 61st, (*Id.* at 11). Lovera confirmed that Medina worked on the Naval Base project in Cincinnati, (Dckt. #86-1 at 28), the Metra project, (*Id.* at 24-25), the Win Café project, (*Id.* at 28), and the Social Security project, (*Id.* at 25). He also confirmed that Medina worked at the Apostolic Church project but stated that he could not recall whether he was working "for Drive" when he worked at that project. (*Id.* at 23).

Medina and Lovera further agree – in part – as to the nature of work that Medina performed in that both men testified that Medina completed some delivery work for Drive. *See* (Dckt. #86-1 at 30) (Lovera testified that Medina was "delivering materials" for drive); (*Id.* at 23) (Lovera testified that Medina "did some deliveries"); (*Id.*) (Lovera testified that Medina was "dropping and taking stuff from the jobs"); *see also* (Dckt. #86-2 at 5) (Medina testified that he did some deliveries for Drive). Lovera and Medina disagree, however, as to whether Medina

---

[3] Although Drive's payroll records do not indicate that Medina was an official Drive employee, this does not preclude the possibility that he was paid by Lovera for performing carpentry work on Drive's behalf.

7

ever performed carpentry work on Drive's behalf. Medina testified that most of the work he performed on behalf of Drive or at Drive worksites was carpentry work. (Dckt. #86-2 at 5).

In addition to this deposition testimony, plaintiffs' allegation that Medina performed carpentry work for Drive also finds support in: (a) sixty-two pages of text messages between Lovera and Medina in which Lovera repeatedly asks if Medina if he could work at Drive projects at the time the Drive carpenters commenced work[4] or simply directs Medina to appear at Drive construction sites, (Dckt. #80-3); (b) a March 9, 2017 letter from Drive's president of construction, Gerardo Cortez, expressing an intent to hire Medina as a "journeyman carpenter" and asking that Medina be admitted to the Union,[5] (Dckt. #80-1); and (c) a training certification card issued by American Scaffolding that refers to Medina as a Drive employee and indicates that he attended a trade seminar on frame scaffolding, (Dckt. #87-1). The assertion that Medina performed work on Drive's behalf at the Great Lakes Naval Base project, in particular, is corroborated by a Department of Defense ID for the Great Lakes Naval Base, which was issued on August 19, 2017, and identifies Medina as a Drive employee. (Dckt. #80-2 at 2).

Not only does Lovera's and Medina's testimony indicate that Medina worked for Drive, but it supports an inference that Drive paid Medina for the work he performed. Medina referred to the cash payments he received for work he performed for Drive as his "paycheck," (Dckt. #86-2 at 12), and Lovera testified that a text message he sent directing Medina to "[s]top by the office

---

[4] For example, on June 2, 2017, Lovera texted Medina with this message: "Hey bro can you work tomorrow . . church at 6:00 a.m.?" (Dckt. 80-3 at 33). This was the time that Drive's carpenters commenced work at the Apostolic Church project. (Dckt. 86-1 at 22).

[5] Although the Union admitted Medina as a journeyman carpenter, defendants imply that the letter from Cortez requesting this admission was forged. (Dckt. #86). They attach another letter with the same date in which Cortez expressed an intent to hire Medina as a "carpenter apprentice," which they cite as the authentic letter. (Dckt. #86-3 at 2). Regardless of which letter is authentic, both confirm an intent by Cortez (Drive's president of construction) to hire Medina to perform carpentry work for Drive. (Dckt. #87 at 4-5).

8

to pick up a check," was likely a reference to Medina's "weekly check," (Dckt. #86-1 at 23-24).[6] Medina's testimony that he was paid weekly for his work, (Dckt. #86-2 at 12), also aligns with Lovera's testimony that he had been paid weekly when he himself worked as a carpenter for Drive, (Dckt. #86-1 at 7).[7]

Drive suggests that Lovera personally paid Medina to complete "tasks that Lovera otherwise would have to have done," (Dckt. #86 at 2), but Lovera's testimony implies that he never paid Medina with his own funds in exchange for such favors, (Dckt. #86-1 at 42) (asked whether he ever gave Medina money for doing him favors, Lovera responded "I lend him money"). An alternate explanation was provided by Medina, who testified that Drive gave Lovera large checks, which Lovera cashed in order to pay Drive's workers. (Dckt. #86-2 at 18). Indeed, the record shows that Lovera received three $20,000 checks from Drive between May 2016 and August 2017. The Court finds it noteworthy that Lovera could initially only remember receiving two of the checks, which he described as "bonuses." (Dckt. #80-1 at 33). When he was shown a third check, Lovera claimed to have forgotten an additional $20,000 bonus. (*Id.* at 34). Also of note, while Lovera testified that one of the bonus checks had been given to him for the express purpose of buying a house, he never bought the house. (*Id.* at 32). Moreover, the Court agrees with plaintiffs that the settlement agreement between Drive and the Union – whereby Drive paid the non-trivial sum of $37,500 to settle a dispute as to Medina's wages and benefits – supports an inference that Medina has been paid by Drive, notwithstanding the fact that a non-admissions clause was included in the agreement. (Dckt. #80-6).

---

[6] Lovera subsequently denied knowledge as to what this text was referring. (Dckt. #86-1 at 24).

[7] Lovera also testified that Drive continued to pay him as a carpenter even when he was working as a project manager. (Dckt. #86-1 at 16) ("I worked as a project manager, but we agreed for me to get paid as a carpenter with all my wages . . . . I didn't want to lose my insurance, so that was part of the agreement."). This indicates that Drive does not always accurately classify employees in its payroll.

9

Based on this record, the Court finds that plaintiffs have presented sufficient evidence to warrant a further response from Drive regarding plaintiffs' assertion that Medina was paid in cash for performing carpentry work on Drive's behalf.[8] Accordingly, to resolve questions regarding the completeness of Drive's responses, the Court grants this motion to the extent that it orders Drive to engage in further inquiry into the following matters: (1) whether Drive has ever paid Medina for any work he performed on Drive projects, either as a carpenter or in any other capacity; (2) whether Drive has orchestrated payments to Medina for any work he performed on Drive projects, either as a carpenter or in any other capacity; and (3) the source of any payments made to Medina on behalf of Drive.

By July 1, 2022, Drive must either supplement its answer to plaintiffs' Interrogatory No. 10 (as modified by plaintiffs' April 19, 2021 letter) regarding the above matters, or provide a sworn certification consistent with the position taken in this brief that it: (1) has never paid Medina for any work Medina performed on Drive's behalf at any Drive projects; and (2) has not provided any payments (including the three $20,000 "bonus checks" referenced above) to Lovera so that Lovera may use those funds to make cash payments to Medina (or any other persons) for work that he performed on Drive's behalf.

### B. Plaintiffs have met their burden of showing that Lovera should be compelled to produce further deposition testimony regarding certain matters.

Federal Rule of Civil Procedure 37 is of "limited application when applied to non-parties," but the rule can be used to order a non-party to answer oral questions propounded or submitted under Rules 30 or 31. *Fisher v. Marubeni Cotton Corp.*, 546 F.2d 1338, 1340 (8th

---

[8] This explanation is as – if not more – reasonable than Drive's alternative hypotheses that Medina was running errands to Drive construction sites (including a site in Cincinnati, Ohio) on a volunteer basis or that he was visiting Drive sites in order to determine "whether he wanted to pursue the field" of construction. (Dckt. #86 at 3).

Cir. 1975); *Edwards v. Dwyer*, No. 1:06-cv-1 CAS, 2011 WL 13277528, at *1-2 (E.D.Mo. June 23, 2011). If a deponent fails to answer a question – or provides an evasive or incomplete answer – the Court may compel an answer. Fed.R.Civ.P. 37(a)(3)(B)(i). For example, courts may find that deponents gave evasive testimony sufficient to warrant additional deposition testimony when they "repeatedly respond[ed] 'I don't recall' to simple questions plainly within [their] ken." *Signature Financial LLC v. Shtayner*, 18 C 4676, 2020 WL 6870817, at *4 (N.D.Ill. Nov. 23, 2020) (ordering a second deposition after finding it was "not credible" that deponent was unable to recall basic facts about his personal affairs, such as whether he paid his lawyers more than a dollar and how he spent a $25,000 cash gift from his mother); *see also Bolus v. Carnicella*, No. 4:15-cv-01062, 2020 WL 4206281, at *2 (M.D.Pa. July 22, 2020) (finding deponent impeded and delayed her examination where she answered with "I don't know" and "I don't recall" 377 times).

In this case, Lovera answered "I don't recall" to at least 110 questions that concerned matters "within his ken." The Court notes, however, that Lovera was recovering from COVID-19 at the time of his deposition. (Dckt. #86-1 at 4). He testified that the illness and the medications he was taking to combat it made him feel weak and sluggish, made it difficult for him to concentrate, and might impact his memory. (*Id.* at 5). Perhaps it was his illness and its effects, then, that caused Lovera's memory to falter as to the following matters.

First, Lovera was repeatedly unable to recall the circumstances surrounding text messages between himself and Medina that referenced checks, paychecks, or payments to Medina. As referenced above, he initially testified that a text message he sent to Medina instructing him to "stop by the office to pick up a check," was sent in reference to Medina's "weekly check." (Dckt. #86-1 at 29). When asked to clarify, however, he quickly demurred,

11

stating, "Yeah, I don't, I don't, I don't know." (*Id.*). Lovera was similarly unable to recall what money Medina was referencing in a June 28, 2017 text message asking, "[I]f you can't pay me tomorrow, can you let me borrow 150 tomorrow please?" (*Id.* at 24). To which Lovera responded, "I will." (*Id.*). Lovera was further unable to recall what money Medina was referencing in an October 3, 2017 text message asking, "What time and where can I get my money?" (*Id.* at 28). To which Lovera responded, "Go to the office and bring the tools." (*Id.*).

Second, Lovera was unable to recall a significant amount of information regarding Drive's construction project at the Apostolic Church, for which he worked as both a project manager and a carpenter. (Dckt. #86-1 at 13). For example, Lovera remembered that Medina "did some deliveries" at the Apostolic Church project, but could not remember whether Medina was "working for Drive" when making those deliveries. (*Id.* at 23). Lovera was also repeatedly unable to recall whether text messages he sent to Medina regarding a "church" were about the Apostolic Church, (*Id.* at 22, 24, 25, 28), even though he knew of only one Drive project that took place at a church, (*Id.* at 22), and he himself had helped Drive bid the project, (*Id*. at 32). Moreover, Lovera could not recall what church he was referencing in a text conversation about a church project with a 6 a.m. start time, even though he remembered that the Apostolic Church project had a 6 a.m. start time. (*Id.* at 22).

Lovera's testimony was also occasionally unclear regarding text messages between himself and Medina that referenced tools or carpentry work. For example, Lovera testified that a text he sent telling Medina to "make sure [he] finish[ed] the columns," "must have been a typing error." (Dckt. #89-1 at 30). Furthermore, Lovera testified that he was unsure what type of pouch Medina was referring to in a text message, despite his testimony that carpenters generally carry

12

tool pouches and people making deliveries generally do not. (*Id.* at 29) (guessing that Medina "might have been referring to a tape pouch").

The fourth category of information about which Lovera gave seemingly inconclusive testimony is information related to his Drive bonuses. Lovera was initially unable to recall the number of $20,000 bonuses he received from Drive, the dates he received each bonus, or the reason behind each bonus. (*Id.* at 30-23). This Court finds it hard to imagine that Lovera – but for the impact of his illness – would have been unable to remember such basic facts about such significant sums of money. *See, e.g., Signature Financial LLC*, 2020 WL 6870817, at *4 (where deponent responded "I don't recall" to questions regarding a $25,000 gift, the court found that "it is not credible that [deponent] was unable to recall basic facts about his personal affairs"). The Court again notes Lovera's testimony that one of the $20,000 bonus checks had been given to him for the express purpose of buying a house, even though he never bought the house. (Dckt. #89-1 at 32).

In light of this record, the Court will compel Lovera to sit for a second deposition on or before July 15, 2022. At that time, he may be re-questioned regarding (1) texts between himself and Medina that reference money and checks; (2) texts between himself and Medina regarding Drive's Apostolic Church project; (3) texts between himself and Medina regarding tools, tool pouches, and construction work; (4) any checks he received from Drive aside from his regular salary; and (5) efforts he took to refresh his recollection as to the above matters.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel (Dckt. #80) is granted on the terms specified above. By July 1, 2022, Drive must either supplement its response to plaintiffs' Interrogatory No. 10 or provide a sworn certification consistent with the assertions contained in

its brief and discussed herein. Furthermore, Lovera must submit to a second deposition by July 15, 2022, during which he may be questioned regarding the topics outlined by the Court. Lovera's request that plaintiffs be ordered to pay the attorney's fees he incurred in responding to their motion is denied.

**ENTERED:** **June 17, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**