**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TRUSTEES OF THE CHICAGO** | ) | |
| **REGIONAL COUNCIL OF** | ) | |
| **CARPENTERS PENSION FUND, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 1:19-cv-2965** |
| **v.** | ) | |
| | ) | **District Judge Charles R. Norgle** |
| **DRIVE CONSTRUCTION, INC.,** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **Defendant.** | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are two motions by defendant Drive Construction, Inc. ("Drive") seeking additional discovery from plaintiffs – Trustees of the Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, Chicago Regional Council of Carpenters Apprentice and Training Program Fund, and Chicago Regional Council of Carpenters Supplemental Retirement Fund. The first asks that the Court either bar plaintiffs from introducing evidence related to certain topics about which plaintiffs' 30(b)(6) witness, John Conklin, was unprepared to testify or, alternatively, order plaintiffs to prepare an additional 30(b)(6) witness to testify regarding the matters unaddressed by Conklin. (Dckt. #62). The second motion asks that the Court compel the production of certain questionnaires and interview notes upon which plaintiffs' allegations are based. (Dckt. #63). Plaintiffs filed a response to each motion, (Dckt. ##76, 78), and Drive filed replies, (Dckt. ##77, 85). For the reasons set forth below, Drive's motions are granted in part and denied in part.

1

## I.     BACKGROUND

Plaintiffs are jointly administered benefit funds created under collective bargaining agreements between the Chicago Regional Council of Carpenters ("the Union") and various associations and employers in the construction industry.  Plaintiffs filed a complaint against Drive, a party to one such collective bargaining agreement ("CBA"), pursuant to 29 U.S.C. §1132 of the Employee Retirement Income Security Act.  (Dckt. #1).  The CBA between Drive and the Union obligates Drive to make monthly contributions to plaintiffs based on the hours of work that is both covered by the CBA and completed by Drive employees.  Plaintiffs allege that the records they received from Drive were inadequate because Drive paid numerous employees in cash and failed to record or report the payments, thus preventing plaintiffs from adequately calculating the benefits due under the CBA.

### A.     The Union's Investigation of Drive

According to the deposition testimony of John Jarger, the Union's Director of Operations, the Union established a tax fraud task force dedicated to investigating claims of fraud in late 2018.  (Dckt. #77-1 at 14).  Soon after the formation of the task force, Jarger made the decision to investigate Drive.  (*Id.*).  This decision was prompted by reports from Alex Perez, a Union business agent, who had heard that Drive routinely paid its employees in cash.  (*Id.*).  Perez and Gil Barragan, a Union organizer, were subsequently brought onto the task force to conduct a field investigation into Drive.  (*Id.*).

To identify which, if any, Drive employees had been paid in cash, Perez and Barragan were given a questionnaire that the Union's attorneys and Jarger prepared for prospective witnesses to complete.  (Dckt. #77-1 at 16-19).  Perez and Barragan were instructed to submit the completed questionnaires directly "to legal counsel for analysis." (*Id.* at 19).  The Union's

attorneys – who are also representing plaintiffs in this matter – used the completed questionnaires to determine whether the person who had filled it out "would make a good witness." (*Id.*). If they would, counsel conducted follow-up interviews. (Dckt. #76 at 5, 8). From this "core information," counsel created witness declarations and instructed plaintiffs regarding how they should amend their audits. (Dckt. #77-1 at 20).

### B. The Deposition of John Conklin

On April 29, 2021, Drive deposed plaintiffs' 30(b)(6) witness, John Conklin. (Dckt. #62-1). According to its deposition notice, Drive planned to question Conklin about "all statements or communications from, with, or to witnesses" regarding (1) contributions unpaid by Drive, (2) hours unrecorded by Drive, or (3) cash payments made by Drive to its workers during the audit period. (Dckt. #62 at 3). Although plaintiffs did not object to the scope of the notice, Conklin was unprepared to discuss these topics at his deposition. For example, when asked about "the process that was used to elicit information from Drive's former employees," Conklin responded, "I have no knowledge." (Dckt. #62-1 at 14). When asked whether plaintiffs were aware of any statements provided by former Drive employees, Conklin responded, "We know there are documents out there. We have not seen any." (*Id.* at 23). When Drive's counsel suggested that those documents would be relevant to plaintiffs' audit, Conklin said, "We're in contact with our legal counsel, and they are letting us know what those documents [contain]." (*Id.*).

## II. LEGAL STANDARD

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Chicago Reg. Council of Carpenters*

*Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018).  Rule 26

provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense."  Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera*

*Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and

defenses in the case, not its general subject matter.").  Discoverable information is not limited to

evidence admissible at trial.  Fed.R.Civ.P. 26(b)(1).

## III.  ANALYSIS

The Court will first address Drive's motion to compel the disclosure of questionnaires

and interview notes.  It will then turn to Drive's request to compel an amended privilege log.

Finally, the Court will address Drive's motion regarding the sufficiency of plaintiffs' 30(b)(6)

witness.

### A.  Plaintiffs need not disclose the questionnaires, which are protected work product.

Plaintiffs' privilege log lists eleven questionnaires authored by Union representatives.  In

response to Drive's motion to compel these questionnaires, plaintiffs argue that the documents

are protected by both the work product doctrine and attorney-client privilege.  The Court agrees

that the documents constitute protected work product and, accordingly, need not be disclosed.

Because the Court finds that the questionnaires are protected work product, it need not address

the issue of whether they are also protected under the attorney-client privilege.

#### 1.  Because the questionnaires were prepared in anticipation of litigation, they are protected work product.

The work product privilege, which is codified in Federal Rule of Civil Procedure

26(b)(3), protects "documents and tangible things that are prepared in anticipation of litigation or

for trial by or for another party or its representative."  Fed.R.Civ.P (26)(b)(3); *MSTG, Inc. v.*

4

*AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 221771, at *2 (N.D.Ill. Jan. 20, 2011).  Plaintiffs, as the party resisting discovery, have the burden of establishing that the work product privilege applies to the questionnaires.  *See, e.g., Coachman Indus. Inc. v. Kemlite*, No. 3:06-CV-160 CAN, 2007 WL 3256654, at *2 (N.D.Ind. Nov. 2, 2007).

Drive first argues that the questionnaires cannot be protected work product because they contain "purely factual material" and do not "show the attorneys' preparation, strategy, or their appraisal of the strengths or weaknesses of the claims."  (Dckt. #85 at 7, 11).  There are two problems with this argument.  First, the Court finds that disclosure of the questionnaires would, in fact, shed light on the mental processes of the attorneys who helped create them.  Jarger testified that the Union's attorneys edited the questionnaire so that it would best suit the Union's needs.  *See* (Dckt. #77-1 at 18).  Therefore, the manner in which the questions were phrased and organized would certainly reveal the attorneys' investigative strategy.  *See, e.g., 1100 West, LLC v. Red Spot Paint & Varnish Co., Inc.*, No. 1:05-cv-1670-LJM-WTL, 2007 WL 2904073, at *2 (S.D.Ind. May 18, 2007) (finding documents reflecting the questions counsel chose to ask witnesses were "classic work product"); *Morisky v. Public Service Electric and Gas Co.*, 191 F.R.D. 419, 425 (D.N.J. 2000) ("[T]he actual questions conceived and organized by [plaintiffs' counsel] are the only arguable work product").

Second, even if the questionnaires did not reflect the attorneys' thinking, plaintiffs' argument fails in that it confuses fact work product with opinion work product.  Fact work product – i.e., documents that *do not* reflect the mental processes of attorneys – is also subject to protection so long as it was prepared in anticipation of litigation.  *See Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010) ("[T]the work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental

impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts."); *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767-68 (7th Cir. 2006) ("The work-product doctrine shields materials that are prepared in anticipation of litigation from the opposing party, on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy."); *High Tech Commc'ns, Inc. v. Panasonic Co.*, No. 94-1477, 1995 WL 83614, at *4 (E.D.La.1995) ("[A] document does not lose its work product status merely because it contains discoverable factual information."). Accordingly, even a document that contains "purely factual information" may be considered work product. *Sandra T.E.*, 600 F.3d 612 at 621 (characterizing witness statements as work product); *Hauger v. Chicago, R.I. & P.R. Co.*, 216 F.2d 501, 508 (7th Cir. 1954) (same).

Drive also makes much of the fact that Jarger – a non-attorney – participated in the creation of the questionnaire template and instructed Union staff on how to complete it. (Dckt. #77 at 2). However, when it comes to work product, "the issue is less whether an attorney is pulling the strings of the investigation, and more of the purpose for which the documents were created." *Estate of Her v. Sadownikow*, No. 17-cv-1015, 2018 WL 3574888, at *3 (E.D.Wisc. July 25, 2018). Accordingly, "'Rule 26 clearly protects party, and not just attorney, preparation' and the 'fact that a particular communication may not go to an attorney does not prevent its being work product.'" *Id.* (rejecting argument that document was not protected work product unless it was created at the direction of an attorney), *quoting In re Air Crash Disaster at Sioux City*, 133 F.R.D. 515, 520 (N.D.Ill. 1990); *Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 409 (N.D.Ill. 2001) (same).

6

The relevant question, then, is not what information the questionnaires contain or who created them, but whether they were created in anticipation of litigation. *Blinks Mfg. Co. v. Nat'l Preso Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983) ("[T]he threshold determination in any case involving the assertion of the work product privilege . . . is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation."). Here, the Court finds that the evidence is sufficient to conclude that they were.

Jarger testified that the completed questionnaires were submitted directly to "legal counsel for analysis," and that counsel used the questionnaires to determine which individuals "would make a good witness" and prepare for witness interviews.[1] (Dckt. #77-1 at 19). These statements certainly support an inference that the questionnaires were prepared in anticipation of litigation. The fact that the Union had already pursued litigation for similar claims against the same defendant also shows that there was "more than a remote possibility of litigation" and that the documents at issue here were prepared with that litigation in mind.[2] *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D.Cal. 1988) ("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.").

Accordingly, plaintiffs have met their burden of showing that the questionnaires were prepared in anticipation of litigation and may be considered work product, notwithstanding the fact that they contain factual information and were largely prepared by non-attorneys.

---

[1] This evidence also suggests that the Union employees were not acting independently, but as agents for the Union's attorneys. This supports a finding of work product protection where the work product doctrine protects "material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

[2] On May 8, 2018, the Union and Drive entered a settlement agreement regarding the Union's claim that Drive had violated the terms of the CBA by failing to compensate its former employee, Eduardo Medina. (Dckt. #80-6). The Union task force to investigate Drive was created in late 2018. (Dckt. #77-1 at 14).

2.      **Under the common interest doctrine, plaintiffs have standing to assert the work product privilege over the questionnaires prepared by the Union.**

The fact that the questionnaires are work product does not necessarily mean they are *plaintiffs'* work product. As plaintiffs reiterate throughout their briefs, they had nothing to do with the Union's investigation of Drive. (Dckt. #76 at 5). Despite this assertion, they maintain that they have the right to assert the work product privilege over questionnaires prepared by the Union because they "share a common interest in enforcing their rights pursuant to [the CBA]." (Dckt. #78 at 6). Once again, the Court agrees.

Under the common interest doctrine, plaintiffs must show that they shared a "common interest" with the Union at the time the questionnaires were prepared, and that they intend to protect each other's work product. *See Breuder v. Bd. of Trustees of Comm. College Dist. No. 502*, No. 15 CV 9323, 2021 WL 949333, at *4 (N.D.Ill. Mar. 12, 2021) (citing cases). When determining whether the doctrine applies, courts consider:

(1) whether the interest is actually a common legal interest;

(2) whether the parties are or anticipate being engaged in litigation;

(3) against a common adversary;

(4) regarding the same or similar issues;

(5) whether the parties have expressed an intent to cooperate, such as by a written agreement;

(6) whether the parties have the same legal counsel; and

(7) whether it is in the interest of justice and fairness to prevent disclosure of the information.

*Id.,* at *5 (citing *Coachman Indus. Inc. v. Kemlite*, No. 3:06-CV-160 CAN, 2007 WL 3256654, at *4 (N.D.Ind. Nov. 2, 2007)).

8

In this case, plaintiffs and the Union both seek to enforce the terms of the same CBA through legal action. The parties share legal counsel, as well as a common adversary. The parties are, essentially, "allies in litigation," and the disclosure of one party's work product to Drive would grant Drive an unfair advantage. *Id.* at *3. Therefore, plaintiffs have standing to assert the work product privilege over the questionnaires prepared by the Union. *See Breuder*, 2021 WL 949333, at *5 ("The party seeking to apply the common interest doctrine need not establish the existence of every one of the [common interest] factors.").

### 3. Drive has not shown a substantial need for the questionnaires.

Unlike the attorney-client privilege, the protection of the work product doctrine may be overcome if the party seeking discovery shows "a substantial need for the materials and an inability to obtain the substantial equivalent of the information without undue hardship." *E.E.O.C. v. Int. Profit Assocs., Inc.*, 206 F.R.D. 215, 221 (N.D.Ill. 2002), (*citing Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 614 (N.D.Ill. 2000). "This is a difficult burden to meet, and is likely to be satisfied only in rare situations, such as those involving witness unavailability." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of America*, No. 00 C 1926, 2000 WL 1898518, at *3 (N.D.Ill. 2000) (citations and quotations omitted).

Here, Drive argues that it has a substantial need for the questionnaires because none of the materials produced by plaintiffs contain any details regarding their allegations of cash payments, and because the Court issued an order barring Drive from interviewing witnesses who may not be represented. (Dckt. #85 at 8-9). According to Drive, it has been unable to ascertain the details of plaintiffs' allegations, such as the hours and dates particular witnesses worked for Drive, the amount they received in cash, and when and how those cash payments were made.

Despite the prior order referenced above, the Court finds that Drive has not shown a substantial need for the questionnaires when it can access the information listed above through other means of discovery. *See Gates v. Rohm and Haas Co.*, No. 06-1743, 2006 WL 3420591, at *2 (E.D.Penn. Nov. 22, 2006) ("[T]he factual information contained in the questionnaires is discoverable . . . even if the questionnaires themselves are not."). Most notably, Drive is permitted to seek – and, indeed, has sought – deposition testimony from the eighteen witnesses identified by plaintiffs. *See High Tech Commc'ns, Inc. v. Panasonic Co.*, No. 94-1477, 1995 WL 83614, at *4 (E.D.La.1995) (denying the production of questionnaires where the moving party "can discover facts disclosed in the questionnaires by deposing the individuals who responded to them"). This is not a case where deposing each individual who completed a questionnaire would be overly burdensome. *Cf. Morisky v. Pub. Serv. Elec. and Gas Co.*, 191 F.R.D. 419, 426 (D.N.J.2000) (finding substantial need because deposing 141 individuals who completed a questionnaire "would be unduly burdensome for both parties").

Drive argues that, in this case, depositions are not a sufficient substitute for the questionnaires themselves because "the witnesses who have been deposed to date have generally testified that they do not recall completing the [q]uestionnaires." (Dckt. #85 at 9). This argument is unpersuasive, however, where Drive does not need information regarding *the questionnaires*, but information regarding *cash payments*. Drive does not allege that any witnesses have been unable to recall information related to their time working for Drive or how they were paid for their work.

Furthermore, any shortcomings in the witnesses' memories can be remedied through interrogatories directed to plaintiffs. While plaintiffs have denied any knowledge of the Union's investigation – insisting that only their attorneys have reviewed the questionnaires and spoken to

witnesses – the Court finds that the knowledge of plaintiffs' attorneys regarding the questionnaires and the Union's investigation of Drive is "available" to plaintiffs for the purpose of Federal Rule of Civil Procedure 33. The facts gleaned from this investigation must be disclosed to Drive when responsive to its interrogatories. *See, e.g., Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 434-35 (E.D.Pa.1978) (holding that "factual information gleaned by plaintiffs' counsel from the questionnaires sent to class members is discoverable by defendant through interrogatories served on plaintiffs' counsel"); *see also Hickman v. Taylor*, 329 U.S. 495, 513 (1947) ("Searching interrogatories directed to [the defendants' attorney] and the [defendants], production of written documents and statements upon a proper showing and direct interviews with the witnesses themselves all serve to reveal the facts in [the defendants' attorney's] possession to the fullest possible extent consistent with public policy.").

For all of the above reasons, Drive's motion to compel the questionnaires is denied.

**B.      Plaintiffs need not disclose a Union representative's notes regarding a witness interview, which are protected under the work product doctrine.**

In addition to the questionnaires, Drive also seeks to compel the production of one set of "interview notes" identified in plaintiffs' privilege log. According to the log, the notes were authored by a Union representative "during a client meeting in anticipation of litigation." (Dckt. #63-3 at 2). As explained in section III(A), the evidence in the record indicates that: (1) the purpose of the Union's investigation of Drive – which included disseminating questionnaires and conducting follow-up interviews with witnesses – was to prepare for litigation; (2) plaintiffs share a common purpose with the Union related to that litigation; and (3) Drive has not shown a substantial need for documents created during that investigation because it may depose witnesses and submit interrogatories to uncover the underlying facts, which are not privileged.

Although the privilege log is unclear as to who attended the meeting where these notes were taken and who interviewed the client/witness, the Court reiterates that the critical issue when considering work product is the purpose for which the document was created. *See, e.g., Sharonda B. v. Herrick*, No. 97 C 1225, 1998 WL 341801, at *7 (N.D.Ill. 1998) (finding notes made by attorneys' agents regarding client interviews were protected under the work product doctrine); *see also U.S. ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 429, 432 (D.D.C. 2014) (memoranda or interview summaries prepared by non-attorneys were work product); *Adams v. City of Montgomery*, 282 F.R.D. 627, 633 (M.D.Ala. May 29, 2012) ("[T]he fact that Lilley, a nonlawyer, conducted the interviews and drafted the report does not vitiate the application of the [work product] doctrine."); *Sec. & Exch. Comm'n v. Strauss,* No. 09 Civ. 4150(RMB)(HBP), 2009 WL 3459204, at *6 (S.D.N.Y. Oct. 28, 2009) (interview notes prepared by non-attorney employees constitute work product).  Because the interview notes were created for the same purpose as the questionnaires, they are protected work product.

## C. Plaintiffs must submit an updated privilege log.

Although the information submitted in plaintiffs' response  supports a finding that the questionnaires and interview notes are privileged, the Court agrees with Drive that plaintiffs' privilege log is insufficient.  As stated in this Court's standing order, privilege logs must be detailed enough to enable other parties to assess the applicability of the privilege asserted. Accordingly, they should include: (1) the name and capacity of each individual from whom or to whom a document and any attachments were sent (including which persons are lawyers); (2) the date of the document and any attachments; (3) the type of document; (4) the Bates numbers of the document, (5) the nature of the privilege asserted; and (6) a description of the subject matter in sufficient detail to determine if legal advice was sought or revealed, or if the document

constitutes work product. *See Allendale Mutual Ins. Co. v. Bull Data Systems Inc.*, 145 F.R.D. 84, 88 (N.D.Ill. 1992).

Here, plaintiffs' log omits the author of the questionnaires and interview notes (listing only "Union Rep") and the name and capacity of each individual from whom or to whom the documents were sent. (Dckt. #63-3). Plaintiffs are ordered to amend their privilege log to include these facts by July 13, 2022. Furthermore, should plaintiffs wish to maintain their assertion of attorney-client privilege over these documents, they must also include the name of the person filling out the questionnaire, the name of the person being interviewed, and the people present during the interview, as these facts are critical to assessing whether the attorney-client privilege would apply.

### D. Plaintiffs must prepare a witness to sit for a second 30(b)(6) deposition and testify regarding the facts uncovered in the Union's investigation of Drive.

When presented with a deposition notice under Federal Rule of Civil Procedure 30(b)(6), a "named organization must . . . designate one or more . . . persons who consent to testify on its behalf." F.R.C.P. 30(b)(6). These depositions are substantially different from individual depositions because the witness must be prepared to testify not only regarding matters within his or her own personal knowledge, but as to matters within the knowledge of the entity as a whole. *DSM Desotech Inc. v. 3D Systems Corp.*, No. 08 C 1531, 2011 WL 117048, at *1 (N.D.Ill. Jan. 12, 2011). Accordingly, entities have a duty to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters." *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 342 (N.D.Ill.1995), *quoting Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D.Tenn. 1986). Rule 30(b)(6) witnesses need not be perfect, so

13

long as they are "educated and gain the requested knowledge to the extent that it is reasonably available to the entity." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-cv-1047-CRS, 2016 WL 9460471, at *3 (W.D.Ky. June 29, 2016).

"Only if a corporation or governmental agency genuinely is unable to provide an appropriate designee because: it does not have the requested information; cannot reasonably obtain it; and, lacks sufficient knowledge after a good faith, thorough review of all available information, will its obligations under Rule 30(b)(6) cease." *Id.* at *4. In that case, where a Rule 30(b)(6) designee "legitimately lacks the ability to answer relevant questions on listed topics and the corporation cannot better prepare that witness or obtain an adequate substitute, then the 'we-don't-know' response can be binding on the corporation and prohibit it from offering evidence at trial on those points." *Id.,* at *5 (citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 690 (S.D.Fla. 2012)).

In its deposition notice, Drive sought information regarding all statements or communications from, with, or to witnesses that related to plaintiffs' allegations of unpaid contributions, unreported carpenter work hours, and carpenters being paid in cash. (Dckt. #62 at 3). When Conklin was asked about these topics, however, he asserted that plaintiffs had little to no knowledge regarding the evidence underlying their own revised audit because that information was in the possession of the Union and had only been communicated to plaintiffs through their shared legal counsel. In light of Conklin's inability to testify as to these matters, Drive now seeks an order barring plaintiffs from presenting any evidence at summary judgment or trial related to its allegations of cash payments. Alternatively, Drive seeks an opportunity to depose an additional 30(b)(6) witness. (Dckt. #62).

14

In response, plaintiffs argue that an additional 30(b)(6) deposition is unnecessary for three reasons: (1) information about the Union's investigation of Drive is not "known or reasonably available" to plaintiffs; (2) any information collected in witness questionnaires and witness interviews with counsel is protected by attorney-client privilege and the attorney work product doctrine; and (3) the information sought by Drive has since been furnished during other depositions. (Dckt. #76 at 4). The Court disagrees on all counts.

> **1.    Information regarding the Union's investigation into allegations of cash payments at Drive is "known or reasonably available" to plaintiffs within the meaning of Rule 30(b)(6).**

Plaintiffs first claim that the requested information regarding communications with witnesses is not "known or reasonably available" to them because it was the Union – not plaintiffs – who investigated allegations of cash payments at Drive. Plaintiffs have apparently refrained from directly examining the questionnaires or witness statements underlying their updated audit. Instead, as Conklin testified, they rely on their legal counsel – which is also the Union's legal counsel – to inspect the evidence collected by the Union and inform plaintiffs as to what those documents contain. (Dckt. #62-1 at 14).

This argument is unavailing, however, because courts have routinely found that a party's responsibility to prepare 30(b)(6) witnesses with all "reasonably available" information extends to "information transmitted from the party's attorneys." *United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 10679614, at *2 (S.D.Ohio Sept. 14, 2009) ("[T]he fact that . . . attorneys are the only individuals with the requisite knowledge to answer Defendants' questions does not prevent them from preparing a designee to answer the questions."); s*ee also Consumer Fin. Prot. Bureau*, 2016 WL 9460471, at *4 (finding that a party is "required to provide responsive answers during the Rule 30(b)(6) deposition, even if the

15

information is transmitted through its lawyers"); *Protective Nat'l Ins. v. Commonwealth Ins. Co.*, 137 F.R.D. 267 (D.Neb. 1989) ("[T]here is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel.").

Consequently, information about the Union's investigation of Drive that is known to plaintiffs' counsel is reasonably available to plaintiffs and their 30(b)(6) witness should have been prepared to testify regarding the investigation's findings. Accordingly, plaintiffs must properly prepare a Rule 30(b)(6) witness to testify consistent with the direction in this decision and present that witness for the continuation of the Rule 30(b)(6) deposition on a mutually agreeable date on or before July 20, 2022.[3]

> **2.  Although the questionnaires and interview notes are protected, plaintiffs' Rule 30(b)(6) witness must be prepared to testify regarding the underlying facts contained in those documents.**

As explained in Section III(A), *supra*, the questionnaires and Union representative notes underlying the April 2021 audit are protected work product. However, the work-product doctrine "only prevents the disclosure of protected documents or communications . . . not the underlying facts." *MSTG, Inc.*, 2011 WL 221771, at *2, (citing *Upjohn v. United States*, 449 U.S. 383, 395-96 (1981)). Accordingly, the witness should be prepared to discuss all pertinent information gleaned by the Union through its investigation of Drive that supports plaintiffs' amended audit. This includes the names of the individuals with claims of cash payments, the hours and dates they worked for Drive, and the amount they allege they were paid.

---

[3] The Court denies Drive's request to confine plaintiffs to the evidence presented by Conklin. Drive can renew this request for relief if plaintiffs fail in good faith to prepare and present a Rule 30(b)(6) witness who is knowledgeable about the matters discussed above.

### 3. The fact that the requested information may have been provided through other disclosures is irrelevant.

Plaintiffs argue that preparing an additional Rule 30(b)(6) witness is unnecessary because Drive obtained the answers to its questions regarding the questionnaires when it deposed witnesses from the Union. But Drive is not limited to one method of discovery. Indeed, parties "may simultaneously utilize any or all of the discovery mechanisms authorized by the rules," including the right "to test [assertions] in questioning witnesses during depositions." *IRIS Corp. Berhad v. United States*, 84 Fed.Cl. 489, 494 (Fed.Cl. 2008). Accordingly, the fact that plaintiffs consider the deposition of their own 30(b)(6) witness to be "less than the optimal means of securing information" does not relieve them of their duty to provide an adequately informed witness. *U.S., ex rel. Fry v. Health All. of Greater Cincinnat*i, No. 1:03-CV-167, 2009 WL 5227661, at *3 (S.D.Ohio Nov. 20, 2009).

Plaintiffs' argument that they have already disclosed the relevant facts through written discovery – such as the April 2021 audit, witness declarations, and other physical evidence – is similarly unavailing. "Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 507 (D.S.D. 2009), *quoting Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 541 (D.Nev. 2008); *see also Consumer Fin. Prot. Bureau*, 2016 WL 9460471, at *4 (noting an entity "may not take the position that its documents state the entity's position so that a Rule 30(b)(6) deposition is unnecessary").

### CONCLUSION

For the above reasons, Drive's motion to bar plaintiffs from presenting evidence that should have been subject to 30(b)(6) examination or, in the alternative, compelling plaintiff to present an adequately prepared witness, (Dckt. #62), is granted in part and otherwise denied.

17

Plaintiffs must properly prepare a Rule 30(b)(6) witness to testify consistent with the direction in this decision and present that witness for the continuation of the Rule 30(b)(6) deposition on a mutually agreeable date on or before July 20, 2022. Drive's motion to compel the production of the questionnaires and interview notes listed in plaintiffs' privilege log, (Dckt. #63), is denied. However, plaintiffs must submit an updated privilege log by July 13, 2022, that complies with the terms outlined in this decision.

**ENTERED:   June 29, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**

18