IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al.,  )<br><br>Plaintiffs,  )<br><br>v.  )<br><br>DRIVE CONSTRUCTION, INC.,  )<br><br>Defendant.  ) | No. 1:19-cv-2965<br><br>District Judge Virginia Kendall<br><br>Magistrate Judge Jeffrey I. Cummings |

## MEMORANDUM OPINION AND ORDER

Plaintiffs – Trustees of the Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, Chicago Regional Council of Carpenters Apprentice and Training Program Fund, and Chicago Regional Council of Carpenters Supplemental Retirement Fund – have filed a motion to compel Francisco Guel (a non-party witness) to submit to an additional deposition, produce documents, and pay sanctions. (Dckt. #103). Guel filed a response on July 19, 2022, (Dckt. #123), to which plaintiffs replied on July 27, 2022, (Dckt. #127). Plaintiffs also filed two motions to supplement on July 11, 2022, (Dckt. #118), and October 14, 2022, (Dckt. #141). For the reasons explained below, plaintiffs' motion is granted in part and denied in part.[1]

### I. BACKGROUND

Plaintiffs are jointly administered benefit funds created under collective bargaining agreements between the Chicago Regional Council of Carpenters ("Union") and various

---

[1] Because the Court took them into consideration in determining the outcome of the instant motion to compel and for sanctions, plaintiffs' motions to supplement, (Dckt. ##118, 141), are also granted.

1

associations and employers in the construction industry. Plaintiffs filed a complaint against defendant Drive Construction, Inc. ("Drive"), a party to one such collective bargaining agreement ("CBA"), pursuant to 29 U.S.C. §1132 of the Employee Retirement Income Security Act. The CBA between Drive and the Union obligates Drive to make monthly contributions to plaintiffs based on the hours of the type of work covered by the CBA that are completed by Drive employees. Plaintiffs allege that the records they received from Drive were inadequate because Drive paid numerous employees in cash and failed to record or report the payments, thus preventing plaintiffs from adequately calculating the benefits due under the CBA.

### A. Deposition of Francisco Guel

Guel is one of several former Drive superintendents accused by plaintiffs of paying cash to Drive employees. Plaintiffs deposed Guel on January 13, 2021. During this deposition – at which Guel appeared without counsel – plaintiffs questioned Guel regarding his knowledge of Accurate Construction, LLC ("Accurate"). Guel denied any knowledge of Accurate. (Dckt. #103-4 at 52). Plaintiffs also questioned Guel regarding another company, Infinity Construction, LLC ("Infinity"). Although Guel initially denied any knowledge of Infinity, (*Id.* at 44), when plaintiffs presented him with records from the Illinois Secretary of State's office indicating that he is, in fact, the owner of Infinity, (Dckt. #103-5), Guel testified that he had "tried to start" the company, but never "followed through." (Dckt. #103-4 at 46). Guel testified that Infinity "never did anything," "never got any work," did not have a bank account, never received any loans, and never entered into any contracts to perform work. (*Id.* at 47).

Guel opened a second company, Infinity Construction FRG 67, LLC ("Infinity 67") on February 22, 2018. (Dckt. #103-6). He testified that Infinity 67 similarly did not have a bank

2

account, never performed any work, and never entered into any contracts. (Dckt. #103-4 at 59-50). Guel also testified that he never paid any Drive employees in cash. (*Id.* at 38).

    B.   **Discovery Post-Dating the Deposition of Francisco Guel**

After plaintiffs filed their initial complaint in this case, the office of the Illinois Attorney General ("AG") opened its own investigation into Drive's payroll practices. As part of this investigation, the AG issued a subpoena to Accurate. In its verified answer, Accurate admitted to having made payments to both Infinity and Guel. (Dckt. #103-3). This information prompted plaintiffs to file a motion to compel Accurate to respond to plaintiffs' own records subpoena, which the Court granted on June 29, 2022. (Dckt. #110). On July 8, 2022, Accurate provided plaintiffs with copies of checks issued by Accurate between February 22, 2017, through June 25, 2019, including checks for more than $1,600,000.00 made to Infinity. (Dckt. #118-1).

Since Guel's deposition, plaintiffs have also obtained copies of two money orders that Guel paid to a former Drive employee, Crescencio Manzano. (Dckt. #103-7). Furthermore, on October 12, 2022, Drive supplemented its discovery productions to include a statement that Guel wrote on June 27, 2022. (Dckt. #141-1). In the statement, Guel admitted that he paid Drive employees in cash to work on non-Union jobs unrelated to Drive. Plaintiffs assert that all of this evidence directly contradicts Guel's deposition testimony.

**II.**   **ANALYSIS**

Plaintiffs ask that the Court compel Guel to submit to a second deposition, produce documents related to payments made by Accurate to Guel or his companies, and reimburse plaintiffs for the costs and fees incurred in connection with Guel's initial deposition, the filing of the instant motion, and any subsequent deposition. The Court will address each request in turn.

### A. Plaintiffs may compel Guel to sit for a second deposition.

Federal Rule of Civil Procedure 37 may be used to order a non-party to answer oral questions propounded or submitted under Rules 30 or 31. *Fisher v. Marubeni Cotton Corp.*, 546 F.2d 1338, 1340 (8th Cir. 1975); *Edwards v. Dwyer*, No. 1:06-cv-1 CAS, 2011 WL 13277528, at *1-2 (E.D. Mo. June 23, 2011). If a deponent fails to answer a question – or provides an evasive or incomplete answer – the Court may compel an answer, Fed.R.Civ.P. 37(a)(3)(B)(i), as this Court did in response to plaintiffs' earlier motion to compel the second deposition of another former Drive employee, Raul Lovera. *See Trustees of Chicago Reg. Council of Carpenters Pension Fund v. Drive Constr.*, No. 1:19-cv-2965, 2022 WL 2193556, at *5 (N.D.Ill. June 17, 2022). Plaintiffs now argue that Guel should similarly be compelled to sit for an additional deposition because the evidence obtained since his deposition definitively shows that he provided evasive or untruthful answers. (Dckt. #103 at 5).

In response, Guel does not dispute that his earlier testimony was inaccurate and evasive. (Dckt. #123). Instead, he argues that he should not be compelled to appear for another deposition because he intends to invoke his Fifth Amendment privilege in response to "each question" that will be asked of him. (Dckt. #123 at 1). Plaintiffs reply that: (1) Guel cannot assert a blanket Fifth Amendment privilege for an entire deposition; and (2) Guel waived his Fifth Amendment privilege when he testified during the initial deposition. The Court agrees on both counts.

### 1. Guel may not assert a blanket Fifth Amendment privilege to avoid sitting for a second deposition.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. Amend. V. The privilege is properly invoked when the answer to a question has "some tendency to subject the person being asked the

4

question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir.2002). "Though by its terms applicable only in criminal proceedings, the Fifth Amendment privilege against self-incrimination has long been held to extend to compelling answers by parties or witnesses in civil litigation [and it] 'applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it.'" *Nat'l Acceptance Co. of Am. V. Barthalter*, 705 F.2d 924, 926-27 (7th 1983), *quoting McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924). Whether a person has properly invoked the privilege is ultimately a question for the Court to decide. *Hoffman v. United States*, 341 U.S. 479, 486 (1951) ("It is for the court to say whether [a person's] silence is justified.").

"[A]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further incrimination." *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 872-73 (7th Cir. 1979). In other words, whether the privilege may be invoked must be determined on a question-by-question-basis. *Barnett v. Stern*, No. 85 C 0144, 1987 WL 8596, at *2 (N.D.Ill. March 27, 1987); *see also Core-Mark Int'l, Inc. v. Sparacio*, No. 91 C 7232, 1994 WL 53763, at *5 (N.D.Ill. Feb. 18, 1994) ("The person claiming the privilege must establish the possibility of self-incrimination with respect to each question and assist the court in its job of weighing the validity of the privilege claim by explaining, to the extent possible, why an answer might tend to be incriminating."). Accordingly, Gruel's argument that he should not be compelled to appear for a second deposition because he intends to invoke the Fifth Amendment in response to "each question," (Dckt. #123 at 8), is not a proper assertion of the privilege.

Indeed, courts have consistently rejected efforts to invoke the protection in such a blanket fashion. *See, e.g., Barnett*, 1987 WL 8596, at *1 ("[A] deponent may not assert a blanket

5

privilege for an entire deposition."); *Shakman v. Democratic Org. of Cook County*, 920 F.Supp.2d 881, 887 (N.D.Ill. 2013) ("The Fifth Amendment does not provide carte blanche to refuse to answer all questions."). Accordingly, Guel must attend a second deposition where the resolution of whether he may properly invoke the Fifth Amendment will depend upon the nature of the question he is asked under the standard discussed below in Section II(A)(3).

### 2. Guel waived his Fifth Amendment privilege by responding to potentially incriminating questions during his initial deposition.

Plaintiffs do not contest that answering their questions may expose Guel to criminal liability. Therefore, the Court need only determine whether and to what extent Guel lost his right to claim the Fifth Amendment privilege against self-incrimination during his second deposition by answering plaintiffs' questions at his first deposition.

Because the Fifth Amendment privilege "is deemed waived unless invoked," *Rogers v. United States*, 340 U.S. 367, 371 (1951), "[a]n individual may lose the benefit of the privilege inadvertently, *without* a knowing and intelligent waiver." *United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986) (emphasis added); *Garner v. United States*, 424 U.S. 648, 654 n. 9 (1976) (same). Indeed, an individual can do so merely by "testifying voluntarily in matters which may incriminate him." *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984). Although courts will not infer such a testimonial waiver lightly, *Smith v. United States*, 337 U.S. 137, 150 (1949), Guel does not contest that he voluntarily testified regarding potentially incriminating subjects in his deposition. Instead, he appears to argue that he can still invoke his Fifth Amendment Protection because: (1) his first deposition constitutes a separate proceeding from any subsequent depositions; and (2) he could not have lost his Fifth Amendment privilege during a deposition he attended without counsel. The Court disagrees on both counts.

6

First, while Guel is correct that a witness's waiver of the Fifth Amendment right is limited to the "single proceeding" in which testimony is given, *see Fed. Deposit Ins. Corp. v. Mahajan*, No. 11-cv-7590, 2014 WL 3359333, at *3 (N.D.Ill. July 9, 2014), the various pre-trial stages in the same lawsuit are a "single proceeding" for Fifth Amendment purposes. *See, e.g., United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990) (holding that a voluntary statement made under oath in an affidavit waived witness's Fifth Amendment proceeding in a subsequent deposition because the affidavit and deposition were part of the same proceeding); *see also Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1081 (10th Cir. 2009) (defendant's waiver of Fifth Amendment privilege during civil deposition constituted waiver of the privilege for defendant in a subsequent bench trial); United *States v. White*, 846 F.2d 678, 690 (11th Cir. 1988) ("A civil deponent cannot choose to answer questions [in a deposition] with the expectation of later asserting the Fifth Amendment [at trial]."); *Jenkins*, 785 F.2d at 1393 (use of an individual's deposition at trial did not violate his Fifth Amendment privilege, which he lost when he gave his deposition). Accordingly, Guel's assertion that his January 13, 2021 deposition would constitute a separate proceeding from his second deposition during the discovery phase in this same civil case is wrong.[2]

Guel next suggests that his lack of counsel at the initial deposition precludes a finding of waiver. (Dckt. #123 at 7-8). This assertion is also without merit. Because "an individual may

---

[2] The Court notes that Guel's reliance on the decision in *Boim v. Quranic Literacy Institute*, No. 00 C 2905, 2004 WL 2700494 (N.D.Ill. Feb. 9, 2004), is misplaced. In that case, the Court found that "nothing in the record suggest[ed] that [defendant] [wa]s attempting to use the Fifth Amendment as both a sword and a shield, that he is somehow abusing the privilege to disclose criminating facts, while withholding the details in order to create a distorted version of the truth." *Id.* at *2. The facts regarding Guel's conduct in this case are quite different in those respects. Moreover, although the *Boim* court found that a defendant could assert his Fifth Amendment privilege at his deposition despite having answered plaintiffs' amended complaint, the court struck defendant's amended answer and affirmative defenses to ensure that plaintiffs were not prejudiced by his late assertion of the privilege. *Id.* at *3.

lose the benefit of the [Fifth Amendment] privilege without making a knowing and intelligent waiver," *Garner*, 424 U.S. at 654 n. 9, "the presence of counsel is not necessary for [Fifth Amendment] waiver to be effective." *Fed. Deposit Ins. Corp.*, 2014 WL 3359333, at *3 ("Whether Hakken-Phillips was uncounseled during her interviews is therefore not dispositive of whether waiver occurred."); *White*, 846 F.2d at 891 ("Since Tucker was not required to testify over a valid claim of the Fifth Amendment, his testimony was not compelled. That Tucker was not represented by an attorney is irrelevant. The lower court should have concluded that Tucker lost his Fifth Amendment privilege by failing to assert it."); *In re A & L Oil Co., Inc.*, 200 B.R. 21, 23-26 (Bankr.D.N.J. 1996) (rejecting witness's argument that "because his prior counsel allegedly wasn't knowledgeable in criminal law and failed to advise him of the privilege, it wasn't lost").

   **3. During his forthcoming deposition, Guel must answer questions regarding any matters that were discussed during his January 13, 2021 deposition.**

As noted above, because Guel voluntarily responded to questions regarding matters which may incriminate him, he waived the protection of the Fifth Amendment. The scope of that waiver, however, is not unlimited. Instead, it is "determined by the subject matter on which the [deponent] breaks [his] silence." *United States v. Gamble*, 969 F.3d 718 724 (7th Cir. 2020); *see also Rutherford v. PaloVerde Health Care District*, ED CV13-1247-JAK, 2014 WL 12637901, at *4 (C.D.Cal. Sept. 23, 2014) ("Where a party voluntarily testifies, the Fifth Amendment privilege is waived with respect to the matters about which he or she testifies.").

Clearly, Guel forfeited the protection with respect to every question he chose to answer at his first deposition – whether truthfully or not. *Garner*, 424 U.S. at 653 ("[A]n individual under compulsion to make disclosures as a witness who revealed information instead of claiming the

8

privilege lost the benefit of the privilege."); *Morris Kirschman & Co., L.L.C. v. Hartford Fire Ins. Co.*, Civ. A. No. 03–1743, 2004 WL 1373277, *3 (E.D.La. June 16, 2004) ("One instance of waiver is when a witness answers a question without asserting the privilege. The privilege is waived as to that particular question."). Furthermore, for every *subject* Guel testified about, "he waive[d] the privilege against self -incrimination as to any *details* relating to that subject." *Wsol v. Fiduciary Mgmt. Assocs., Inc.*, No. 99 C 1719, 2001 WL 290613, at *3 (N.D.Ill. March 20, 2001) (emphasis added); *see also Rogers*, 340 U.S. at 373 ("Disclosure of a fact waives the privilege as to details."); *Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1158 (7th Cir.1981) (same).

As explained by the Supreme Court, "[a] witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and the integrity of the factual inquiry." *Mitchell v. United States*, 526 U.S. 314, 322 (1999). Indeed, "a contrary rule 'would open the door to distortion of facts by permitting a witness to select any stopping place in the testimony.'" *Id.*, quoting *Rogers*, 340 U.S. at 371; *see also United States v. Davenport*, 929 F.2d 1169, 1174 (7th Cir. 1991) (noting the privilege does not permit individuals "to attempt to gain an advantage in the criminal process . . . by selective disclosure followed by a clamming up."). Accordingly, Guel must respond to any questions involving the same topics as those he has already given testimony on – i.e.., he may be questioned about the details. *Rogers*, 340 U.S. at 373, 374 n. 16 ("[T]he privilege exists for the sake of the criminating fact as a whole.").

For all of these reasons, the Court grants plaintiffs motion to compel Guel to sit for a second deposition on or before November 30, 2022, during which Guel must respond to all questions so long as either: (1) the answers are not incriminating; (2) he has already answered the

9

question in his initial deposition without invoking the privilege; *or* (3) the question concerns details relating to topics he provided testimony about during his first deposition. For example, because Guel failed to invoke his Fifth Amendment privilege in response to questions regarding Accurate, Infinity, and Infinity 67, he must answer questions related to his involvement with and knowledge of those companies. Similarly, because Guel responded to questions regarding cash payments made to Drive employees, he will have to respond to any questions regarding cash payments to Drive employees in any context.[3]

      **B.**      **Plaintiffs' request to compel Guel to produce documents is denied.**

Plaintiffs also moved to compel Guel to produce documents reflecting payments made by Accurate to either Guel, Infinity, or Infinity 67. (Dckt. #103 at 5-6). Citing *United States v. Hubbell*, 530 U.S. 27, 28 (2000), Guel responded that, like the motion to compel his deposition, this request has a "testimonial aspect," because the act of producing the documents would "communicate information that may lead to incriminating evidence." (Dckt. #123 at 4-5). As such, Guel invoked his Fifth Amendment privilege in response to the documents request. In reply, plaintiffs apparently concede that because the existence of the documents they requested is not a "foregone conclusion," the production of such documents would, at this juncture, be testimonial. (Dckt. #127 at 4-5). Accordingly, they appear to have abandoned their effort to compel Guel to produce such documents, and they now seek only to question Guel regarding their existence. (*Id.* at 10) (setting forth plaintiffs' revised request for relief). The Court finds that plaintiffs may ask such questions during Guel's second deposition and Guel must respond in accordance with the law outlined in Section II(A)(3), *supra*.

---

[3] It does not appear that plaintiffs intend to question Guel about companies not mentioned during his initial deposition or about individuals who do not work for Drive. If such questions are posed, Guel may assert his Fifth Amendment privilege on a question-by-question basis consistent with the standards of law described herein. *See Barnett*, 1987 WL 8596, at *2.

### C. Plaintiffs' request for sanctions is denied without prejudice.

The Court now turns to plaintiffs' request that Guel be ordered to reimburse them for attorney's fees and other costs related to Guel's initial deposition, any subsequent depositions, and preparing this motion to compel. (Dckt. #103 at 6). Guel did not respond to this request in his response. Rule 37(a)(5)(A) provides that, when a motion to compel a discovery response is granted:

> [T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if . . . circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(A). Whether the imposition of sanctions would be "unjust" is determined within the broad discretion of the district court. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 959 (N.D.Ill. 2021). Here, given the fact that Guel is a non-party, was unrepresented at the time of his deposition, and successfully contested at least one aspect of plaintiffs' motion to compel, the Court does not find an award of costs and fees would be appropriate at this junction. However, this ruling is without prejudice. Should Guel fail to comply with the dictates within this decision, plaintiffs may renew their request for sanctions and it will be within this Court's authority to grant it. *See, e.g., Doxtator v. O'Brien*, No. 19-C-137, 2021 WL 1997581, at *1 (E.D.Wis. May 19, 2021) (referencing prior court order directing non-party deponent to submit to additional questioning and to pay plaintiffs' expenses in bringing the motion to compel and for the costs associated with continuing the non-party deponent's deposition).

11

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion to compel, (Dckt. #103), is granted in part and denied in part. Guel must submit to a second deposition by November 30, 2022, during which he may be questioned and must answer within the parameters specified by this Court. Guel need not produce any documents at this time. Plaintiffs' request for sanctions is denied without prejudice.

**ENTERED:** November 2, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**