IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-2965 |
| v. | ) ) | District Judge Virginia Kendall |
| DRIVE CONSTRUCTION, INC., | ) ) | Magistrate Judge Jeffrey I. Cummings |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs – Trustees of the Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, Chicago Regional Council of Carpenters Apprentice and Training Program Fund, and Chicago Regional Council of Carpenters Supplemental Retirement Fund – have filed a motion to compel Juan Carlos Lara (a non-party witness) to submit to an additional deposition, produce documents, and pay sanctions. (Dckt. #121). Lara filed a response on August 12, 2022. (Dckt. #130). For the reasons explained below, plaintiffs' motion is granted in part and denied in part.

**I.      BACKGROUND**

Plaintiffs are jointly administered benefit funds created under collective bargaining agreements between the Chicago Regional Council of Carpenters ("Union") and various associations and employers in the construction industry. Plaintiffs filed a complaint against defendant Drive Construction, Inc. ("Drive"), a party to one such collective bargaining agreement ("CBA"), pursuant to 29 U.S.C. §1132 of the Employee Retirement Income Security Act. The CBA between Drive and the Union obligates Drive to make monthly contributions to

1

plaintiffs based on the hours of the type of work covered by the CBA that are completed by Drive employees. Plaintiffs allege that the records they received from Drive were inadequate because Drive paid numerous employees in cash and failed to record or report the payments, thus preventing plaintiffs from adequately calculating the benefits due under the CBA.

    A.    **Deposition of Juan Carlos Lara**

Lara is one of several former Drive superintendents accused by plaintiffs of paying cash to Drive employees. Plaintiffs deposed Lara on January 13, 2021. (Dckt. #121-1). Lara appeared via Zoom, with counsel. Prior to Lara's deposition, Lara's counsel had represented to plaintiffs that Lara had not worked anywhere other than Drive in 2018, 2019, and 2020. (Dckt. #121-5 at 2) (December 8, 2020 email from attorney John Cooney)). During the deposition, plaintiffs questioned Lara (through a Spanish-language interpreter) regarding his knowledge of a company named A. Lara Construction, LLC. Lara testified that his wife opened the company and that it was a cleaning company. (*Id.* at 10). When asked whether he played any role in A. Lara Construction, Lara testified that he did not. (*Id.*).

    B.    **Discovery Post-Dating the Deposition of Juan Carlos Lara**

After plaintiffs filed their initial complaint in this case, the office of the Illinois Attorney General ("AG") opened its own investigation into Drive's payroll practices. As part of this investigation, the AG issued a subpoena to a company called Accurate Construction, LLC ("Accurate"). In its verified answer, Accurate admitted to having made payments to Lara, among other individuals associated with Drive. (Dckt. #121-3). This information prompted plaintiffs to file a motion to compel Accurate to respond to plaintiffs' own records subpoena, which the Court granted on June 29, 2022. (Dckt. #110). On July 8, 2022, Accurate provided plaintiffs with copies of checks issued by Accurate, including checks totaling $97,050.00 that

2

were made out to A. Lara Construction and signed by Lara between February 9, 2017, and May 26, 2017. (Dckt. #121-6). In the endorsement section of various checks, Lara identified himself as the "owner" of A. Lara Construction. (*Id.*). Illinois Secretary of State records list Lara's wife as A. Lara Construction's "president" and Lara himself as the company's "agent." (Dckt. #121-4). Accurate's disclosures also included checks totaling $39,859.85 that were made out to Lara himself and issued between January 5, 2018, and May 25, 2018. (Dckt. #121-7). Plaintiffs argue this evidence directly contradicts Lara's deposition testimony regarding his role with A. Lara Construction, as well as his attorney's email representation regarding Lara's employment history.

## II. ANALYSIS

Plaintiffs ask that the Court compel Lara to submit to a second deposition, produce documents related to payments made by Accurate to Lara and A. Lara Construction, and reimburse plaintiffs for the costs and fees incurred in connection with Lara's initial deposition, the filing of the instant motion, and any subsequent deposition. The Court will address each request in turn.

### A. Plaintiffs may compel Lara to sit for a second deposition.

Federal Rule of Civil Procedure 37 may be used to order a non-party to answer oral questions propounded or submitted under Rules 30 or 31. *Fisher v. Marubeni Cotton Corp.*, 546 F.2d 1338, 1340 (8th Cir. 1975); *Edwards v. Dwyer*, No. 1:06-cv-1 CAS, 2011 WL 13277528, at *1-2 (E.D.Mo. June 23, 2011). If a deponent fails to answer a question – or provides an evasive or incomplete answer – the Court may compel an answer, Fed.R.Civ.P. 37(a)(3)(B)(i), as this Court did in response to plaintiffs' earlier motions to compel the additional deposition of former Drive employee Raul Lovera. *See Trustees of Chicago Reg. Council of Carpenters Pension*

3

*Fund v. Drive Constr.*, No. 1:19-cv-2965, 2022 WL 2193556, at *5 (N.D.Ill. June 17, 2022). Plaintiffs now argue that Lara should similarly be compelled to sit for an additional deposition because the evidence obtained since his deposition definitively shows that he provided evasive or untruthful answers. (Dckt. #121 at 4). They seek to question Lara about Accurate, A. Lara Construction and/or any of Lara's other related companies, and cash payments made to Drive employees. In response, Lara argues that (1) when read in context, his statement that he had no role at A. Lara Construction was not untruthful or evasive; and (2) plaintiffs' failure to question him regarding the above topics during his first deposition does not entitle them to a "second bite of the apple." The Court disagrees on both counts.

First, Lara argues that plaintiffs' question regarding his "role" at A. Lara Construction "was clearly directed [at] the *physical* work Lara performed at A. Lara Construction." (Dckt. #130 at 4) (emphasis added). As such, Lara goes on, he was not being untruthful or evasive when he testified that he had no role at A. Lara Construction. The conversation went as follows:

> Q. Did you know if your brother Edward Lara ever worked for A. Lara Construction Company?
>
> A. I don't recall if he went to help my wife.
>
> Q. Do you know if your brother ever got a hand injury?
>
> MR. COONEY: Objection, which brother?
>
> BY MR. McGANN:
>
> Q. Edgar Lara.
>
> A. No, I don't recall .
>
> Q. Do you know if A. Lara Construction Company performed work for Drive Construction?
>
> A. No, never.

4

> Q. **Did you play any role in the company of A. Lara Construction?**
>
> A. **No. I couldn't work at that time.** Both of my feet were broken.
>
> Q. And what time are you referring to?
>
> A. No. I've always had problems with my feet. They've always been bad. I have boots that I have to wear. It's been like that since about 2010.
>
> Q. What work does your wife Anna Lara perform for A. Lara Construction Company?
>
> A. That company was closed in 2017. Automatically it closed because work was not being done, but she was doing cleaning work. Mostly cleaning.

(Dckt. #121-1 at 10) (emphasis added).

The Court disagrees with Lara's assertion that the question regarding his brother's hand injury proves that plaintiffs' subsequent questions were asked only with regard to "physical involvement" with A. Lara Construction. Between February 9, 2017, and May 26, 2017, Accurate issued seven checks worth a total of $97,050.00 to A. Lara Construction. Lara endorsed each of those checks, signing five of them as "John C. Lara, owner." (Dckt. #121-6). However, when asked whether he played "*any role* in the company of A. Lara Construction," he responded that he did not. Regardless of whether he thought this question referred to his cleaning abilities or his management of the business, his answer was incomplete. Accordingly, plaintiffs are entitled to re-question Lara regarding his role – both physical and non-physical – at A. Lara Construction. Lara must sit for a second deposition on or before November 30, 2022.

The Court will next address Lara's argument related to the scope of plaintiffs' questioning. Lara suggests that because plaintiffs failed to ask Lara: (1) whether he worked for any other company before starting with Drive in July 2018; (2) whether he received any other source of income during the subpoena period; or (3) any questions related to Accurate, they are not entitled to a second deposition regarding those topics. This assertion ignores the fact that one

5

month before Lara's deposition, Lara's attorney represented to plaintiffs that "other than Drive" Lara had "not worked elsewhere" in 2018, 2019, or 2020. The Court will not penalize plaintiffs because their attorneys relied on the above representation of Lara's counsel and declined to question Lara regarding work for any other companies during this time period. Now in possession of evidence that Accurate paid Lara – in his individual capacity – $39,859.85 in 2018, plaintiffs reasonably seek to question Lara regarding his relationship with Accurate. They may do so during his forthcoming deposition.

## B. Plaintiffs' motion to compel the production of documents is granted in part and denied in part.

Plaintiffs next ask that Lara be compelled "to produce all documents, including but not limited to bank records and statements, reflecting each payment made to Lara and/or [A. Lara Construction] by [Accurate] as admitted in its June 8, 2022 verified answer." (Dckt. #121 at 5). In response, Lara asserts that plaintiffs have never requested such documents.

The Document Rider plaintiffs submitted with their subpoena sought:

1. Copies of paycheck stubs received from any employer;
2. Copies of all W2's received from any employer;
3. Copies of all 1099's received from any employer;
4. Copies of all individual state income tax returns filed in any state;
5. Copies of all individual federal income tax returns;
6. Copies of any agreements and/or contracts entered into by you personally or as the sole proprietor of any entity to perform any type of carpentry work, including but not limited to drywall repair, drywall installation and the installation of insulation;
7. Copies of any invoices submitted by you personally or as the sale proprietor of any entity for payment related to the performance of any type of carpentry work.
8. Copies of all state and federal tax returns filed on behalf of "A Lara Construction" and "Lara Repairs."

(Dckt. #130-1). Lara's attorney responded to the request via email with the following statement:

Please see the only documents we have in response. The company A Lara Construction and Lara Repairs do not have tax returns for the years in question.

6

1. Other than Drive 2018, 2019 and this year he has not worked elsewhere.
2. See attached
3. None.
4. He has not filed a tax return
5. He has not filed a tax return.
6. There were none
7. There were none
8. There were none filed.

(Dckt. 121-5). If Accurate ever paid Lara as his employer, then those paycheck stubs should have been submitted in response to the first request and Lara must produce them by November 14, 2022. On the other hand, Lara is correct that plaintiffs' Document Rider did not seek the production of the documents they now seek with regard to A. Lara Construction's bank records and statements or checks that Lara received in a non-employment capacity. Consequently, the Court will not compel Lara to produce these documents.

      **C.     Plaintiffs' motion for sanctions is denied without prejudice.**

Finally, plaintiffs ask that Lara be ordered to reimburse them for attorney's fees and other costs related to his initial deposition, any subsequent depositions, and preparing this motion to compel. (Dckt. #121 at 5). Lara responds that he should not be made to pay because plaintiffs failed to "take a thorough deposition or make a proper document request." (Dckt. #130 at 9).

Rule 37(a)(5)(A) provides that, when a motion to compel a discovery response is granted:

> [T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if . . . circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(A). Whether the imposition of sanctions would be "unjust" is within the broad discretion of the district court. *See DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 959 (N.D.Ill. 2021). Here, given the fact that Lara is a non-party and

7

successfully contested one aspect of plaintiff's motion to compel, the Court does not find an award of costs and fees appropriate at this junction. This is especially true where Lara answered only one of plaintiffs' questions – albeit one of great importance – in a demonstrably evasive manner. *Cf. Trustees of Chicago Reg. Council of Carpenters Pension Fund*, 2022 WL 2193556 at *5.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel, (Dckt. #121), is granted in part and denied in part. Lara must produce to plaintiffs any paycheck stubs he received from Accurate Construction, LLC by November 14, 2022, and submit to a second deposition by November 30, 2022, during which he may be questioned regarding his role in A. Lara Construction and his relationship with Accurate. Plaintiffs' motion for sanctions is denied without prejudice.

**ENTERED:** November 2, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**