THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, *et al.*, | )<br>)<br>) |
| *Plaintiffs*, | ) No. 19 C 2965 |
| v. | ) Judge Virginia M. Kendall |
| DRIVE CONSTRUCTION, INC., | ) |
| *Defendant*. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiffs have moved for leave to file a second amended complaint ("SAC"). [150] Defendant opposes the motion. (Dkt. 158). For the following reasons, Plaintiffs' Motion is granted. [150]

**Background**

Plaintiffs are trustees of pension funds[1] that receive contributions from employers pursuant to collective bargaining agreements between employers and the Chicago Regional Council of Carpenters, a labor union. (Dkt. 29 ¶ 2). This action began in May 2019 when Plaintiffs filed a complaint against Drive Construction, Inc. (Dkt. 1). Their claims arise under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132 *et seq.* (*Id.* ¶ 3). Plaintiffs alleged that Drive had not been paying pension contributions as required by collective bargaining agreements, and they sought an audit of Drive's books and records. (*See generally* dkt. 1).

---

[1] The pension funds represented by the Plaintiff Trustees include the Chicago Regional Council of Carpenters Pension Fund, the Chicago Regional Council of Carpenters Welfare Fund, the Chicago Regional Council of Carpenters Supplemental Retirement Fund, and the Chicago Regional Council of Carpenters Apprentice and Trainee Program. (Dkt. 29 ¶ 2).

1

Following early discovery, the Court granted leave on March 5, 2020, to amend the complaint to account for preliminary audit findings. (Dkt. 28). Plaintiffs immediately filed their first amended complaint ("FAC"). (Dkt. 29). The FAC alleges Drive failed to submit $574,123.70 in contributions owed to the pension funds for the period between January 2016 and March 2019. (*Id.* ¶ 7). The parties continued discovery, which can only be described as contentious. As often happens, each side blames the other for the numerous discovery issues that arose in the two years that followed. (*See* dkt. 151 at 2; dkt. 158 at 10; dkt. 166 at 6).

While litigation continued, the Illinois Attorney General ("AG") began investigating Drive's payroll practices. (Dkt. 151-1 ¶ 34; dkt. 158 at 11–12 (noting separate lawsuit by AG against Drive in Circuit Court of Cook County proceeding as Case No. 2022 CH 08722)). According to Plaintiffs, the AG's investigation and lawsuit brought to light information relevant to their action against Drive. (Dkt. 151 at 4). New information prompted this Motion for leave to file a second amended complaint ("SAC"). The SAC proposes to add Accurate Construction, LLC, as an additional defendant. (Dkt. 151-1 ¶ 3). Plaintiffs claim they learned through recent discovery that Drive completely controlled Accurate. (*Id.* ¶ 3). They believe that through its control of Accurate, Drive perpetuated a cash-pay scheme over several years and thus avoided paying millions of dollars to the pension funds. (*Id.*)

The SAC centers on the dealings of three brothers—Gerardo, Eduardo, and Jesus Cortez. (*Id.* ¶ 8). Gerardo and Eduardo Cortez are officers of Drive, and Jesus Cortez was employed by Drive. (*Id.* ¶ 9, 12). In 2014, Jesus Cortez formed Cortez Accurate Construction LLC, also registered to do business under the name Accurate Construction, LLC. (*Id.* ¶ 10). In 2015, Cortez Accurate Construction LLC was dissolved. (*Id.* ¶ 11). In 2016, Accurate Construction, LLC, was

organized, with an individual named Kelly Byrne registered as its sole member. (*Id.*) Kelly Byrne had previously served as the Vice President of Cortez Accurate Construction LLC. (*Id.*)

Essentially, Plaintiffs allege that Accurate was nothing but a paper company that the Cortez brothers controlled and treated as an alter ego of Drive in their construction business. (*See id.* ¶¶ 13–17). Further, they allege that Drive superintendents established other corporate entities that received millions of dollars in payments from Accurate, converted these payments into cash or money orders, and delivered these as wage payments to Drive's carpenters. (*Id.* ¶¶ 18–23).

Plaintiffs explain that in 2019, before filing this lawsuit, their accountant had requested pursuant to an audit engagement that Drive produce the books and records of Accurate. (*Id.* ¶ 26). Gerardo Cortez denied having any control over Accurate. (*Id.* ¶ 27). Plaintiffs served a subpoena duces tecum on Accurate early in the litigation—January 2020—requesting its books and records and contracts with Drive, but Accurate denied having any and objected to relevancy. (*Id.* ¶ 29). Both Gerardo Cortez and Francisco Guel (a Drive superintendent) denied in their depositions being familiar with a company known as Accurate Construction. (*Id.* ¶¶ 30–31). Plaintiffs claim that Drive and its agents deliberately concealed Drive's relationship with Accurate throughout the litigation. (*Id.* ¶ 32).

The Illinois Attorney General subpoenaed Accurate in its own investigation of Drive's payroll practices. (*Id.* ¶ 35). In response, Accurate admitted to paying the companies owned by Drive's superintendents millions of dollars. (*Id.*) Plaintiffs now claim, based on newly discovered evidence since that subpoena response, that Drive and Accurate together failed to submit over $9 million to the pension funds, covering a period from January 2016 through the present. (*Id.* ¶¶ 39, 45). They move to file the SAC to allege their ERISA contribution claims against both Drive and

3

Accurate as alter egos and/or a single employer. (*Id.*; dkt. 150). Drive opposes the Motion, arguing that allowing the amendment at this stage would be unduly prejudicial. (Dkt. 158).

## Legal Standard

A party may request leave of the court to amend its pleading, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court grants amendments liberally, "based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *McDaniel v. Loy. Univ. Medical Ctr.*, 317 F.R.D. 72, 76 (N.D. Ill. 2016) (quoting *Olech v. Village of Willowbrook*, 138 F. Supp. 2d 1036, 1040 (N.D. Ill. 2000)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Ultimately, the district court's decision to grant or deny a motion to file an amended pleading is completely within its "sound discretion." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008).

## Discussion

Drive argues that the SAC would unduly prejudice its defense because the claims have fundamentally changed given the new alter ego/single employer theory of liability against Drive and Accurate. (Dkt. 158 at 5–6). Further, adding Accurate as a party would "greatly expand discovery" both for Plaintiffs to investigate Accurate's liability in the alleged scheme and for Drive to explore the possibility of bringing crossclaims against Accurate and third-party claims against its agents, among others. (*Id.* at 6–7). Finally, Drive argues Plaintiffs unduly delayed this potential

4

amendment when they "have known about Accurate Construction since at least 2019." (*Id.* at 8). This delay, Drive claims, further prejudices Drive by prolonging resolution of the claim and by increasing the costs relevant to discovery in what has already been costly litigation. (*Id.* at 8–11). In the alternative, Drive asks the Court to stay this action pending resolution of the AG's separate lawsuit against the parties. (*Id.* at 11–12).

A.  **Undue Delay and Prejudice**

While "[d]elay on its own is usually not reason enough for a court to deny a motion to amend," *Soltys*, 520 F.3d at 743, a protracted delay weighs against granting leave to amend. *Id.* (citing *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994)). "Undue delay is most likely to result in undue prejudice" when a combination of factors—"delay in proceedings without explanation, no change in the facts since filing of the original complaint, and new theories that require additional discovery—occur together." *McDaniel*, 317 F.R.D. at 77 (internal citations omitted); *Kohler v. CRST Expedited, Inc.*, No. 21-cv-1359, 2022 WL 4598885, at *1 (S.D. Ill. Sept. 30, 2022). "The party seeking to amend has the burden of showing that undue prejudice will not result to the non-moving party." *McDaniel*, 317 F.R.D. at 77 (citing *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994)).

The Court first concludes that Plaintiffs did not unduly delay moving to file the SAC. The underlying information by which they now allege an alter ego/single employer relationship between Drive and Accurate was not available until Accurate's response to the AG's subpoena in the separate investigation. This appears to be a bona fide change in circumstances, rather than evidence of any bad faith or dilatory motive on Plaintiffs' part. Rather, as alleged in the SAC, any bad faith is on the part of Defendants who allegedly have attempted to hide their legal obligations and then concealed their involvement in that effort. Agents of Drive resisted all queries regarding

5

Accurate and its relationship with Drive from the beginning. From 2019 until recently, it was not clear that Accurate may have been controlled by the same officers as Drive. The LLC's sole member was not related to the Cortez family, and Gerardo Cortez and Francisco Guel both denied knowing anything about Accurate.[2] Drive does not deny that the AG's investigation revealed new information about Accurate's relationship with Drive and its agents.

Plaintiffs promptly filed their motion to compel Accurate to produce information after the response to the AG's subpoena provided sufficient basis for it. (Dkt. 108). Plaintiffs then sought leave to file their amended complaint shortly after Accurate complied with the motion to compel. (*See* dkt. 140). Therefore, Plaintiffs sought to amend their complaint to add Accurate as expeditiously as possible under these circumstances.

Finally, Drive cites Plaintiffs' failure to comply with their discovery obligations as additional evidence of a bad-faith delay. But neither side has clean hands here. Both have initiated various discovery disputes throughout the litigation. While Plaintiffs are not blameless, their failure to bring the SAC sooner cannot be attributed to engaging in contentious discovery techniques. Drive has also played this game.

Because of these changes in circumstances—which were not entirely unknown to Drive from the beginning of this litigation—the length of time between Plaintiffs filing the FAC and moving for leave to file the SAC was not an undue delay. Longer delays, moreover, are not unprecedented. *See King*, 26 F.3d at 723–24 (district court did not abuse its discretion by granting defendant's motion to file an amended answer three years after filing original answer). The

---

[2] The Court is not convinced by Drive's explanation of Cortez's and Guel's deposition answers denying any knowledge of "Accurate Construction"—that Plaintiffs had not asked about "Cortez Accurate Construction," the formal registered name of the former entity operated by Jesus Cortez that had not existed since 2015. (Dkt. 158 at 3 n.4). Given the current AG lawsuit against both Drive and Accurate, it is much more likely that both Gerardo Cortez and Francisco Guel had at least some knowledge of Accurate's business.

question then becomes whether the non-moving party would still be unduly prejudiced by the changes in the SAC. *See McDaniel*, 317 F.R.D. at 77. If Plaintiff's allegations prove to be true, and the Court must take them as such at this stage, denying the filing of the SAC would serve to shield Defendants from liability due to their own actions of concealing the ownership of the company.

Courts may properly refuse an amendment where it creates "new complex and serious charges" that require additional discovery, especially "in conjunction with a fast-approaching trial date." *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993); *see also Johnson v. Methodist Medical Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) (engaging in substantial additional discovery causes prejudice to opposing party when movant is allowed to amend). But "just because additional discovery will be necessary is not a reason by itself to deny a motion to amend." *Stimac v. J.C. Penney Corp., Inc.*, No. 16 C 3581, 2018 WL 497367, at *2 (N.D. Ill. Jan. 22, 2018)).

The Court is cognizant that granting leave to file the SAC will require additional discovery. This is not ideal for a case pending since mid-2019. But the Court notes that much of the discovery relevant to the additional party and new damages calculations has already been completed. From their August and September 2022 discovery, Plaintiffs affirm they have now received "several thousand pages of relevant financial information from third-parties that support the facts alleged in the [SAC]." (Dkt. 151 at 7). The Court takes Plaintiffs at their word. The Court will likewise hold Plaintiffs to their representation that they anticipate no more than six additional depositions and two third-party subpoenas related to the addition of the new party on the SAC.[3] Expert discovery has not yet closed, briefing schedules for dispositive motions have not been set, and

---

[3] *See* dkt. 153 at 3 (identifying in joint status report six additional depositions). When the parties appeared before the Court on November 3, 2022, Plaintiffs did not dispute they were seeking only limited additional discovery as identified in their joint status report.

there is no trial date yet. The limited extension of fact discovery is reasonable under these circumstances.

As to whether the SAC would prompt Drive to further investigate Accurate's books and the activities of its agents for purposes of asserting crossclaims or third-party claims, this appears to be well within Drive's control to pursue or not. Regardless, if Drive already plans—as it has said—to pursue claims against Accurate Construction and two former Drive employees for conversion, (dkt. 158 at 7), then it will presumably undertake this discovery anyway. The alleged conversion of millions of dollars would seem to merit Drive's independent discovery into Accurate's dealings. Drive would not then be prejudiced from doing so within the context of this litigation and the SAC.

Finally, the Court generally finds that exercising its discretion here to allow Plaintiffs to proceed against both Drive and Accurate is in the interest of justice and conserves judicial resources. Though Drive maintains this matter concerns only the specific hours that a handful of individual carpenters worked—and whether Drive fulfilled its obligation to contribute to pension funds for these carpenters' wages—Plaintiffs have sought the source of the alleged cash wages since the beginning. If, as claimed, Plaintiffs can now identify that source with the benefit of information not available when this all began, the Court concludes this satisfies the liberal policy of allowing an amendment so the claim can progress on its merits. *See McDaniel*, 317 F.R.D. at 76. The Court also recognizes the strong likelihood that, should their Motion be denied, Plaintiffs would file an independent action against Accurate alleging the same claims.[4] Judicial economy favors addressing the claims together rather than beginning anew in a separate action.

---

[4] Plaintiffs again represented as much in the November 3, 2022, status hearing in open court.

B.     **Stay of Proceedings**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Tex. Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The party requesting a stay bears the burden of showing that circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). Courts generally consider three factors in evaluating a motion to stay: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *See, e.g.*, *Tel. Sci. Corp. v. Asset Recovery Solutions, LLC*, No. 15-cv-5182, 2016 WL 47916, at *2 (N.D. Ill. Jan. 5, 2016).

Drive contends circumstances here justify staying this action because the AG's separate lawsuit in the Circuit Court of Cook County concerns "the very same issues." (Dkt. 158 at 11). It does not.[5] While both actions may involve some of the same underlying facts—the alleged cash-pay scheme to pay workers—they concern very different legal issues and separate parties. The AG initiated a law enforcement action against Drive and thirteen other individual and corporate defendants. The claims there arise under Illinois statutes and aim to collect unpaid wages on behalf of aggrieved workers. By contrast, this lawsuit arises under ERISA—over which the federal court exercises exclusive jurisdiction—and seeks recovery of allegedly unpaid pension fund

---

[5] Drive has not even attempted to argue that the federal and state proceedings are considered parallel, such that exercising a stay under the doctrine of *Colorado River* would be appropriate. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976) (permitting federal court, in exceptional circumstances, to stay or dismiss a suit when parallel state court case is underway). In any event, the *Colorado River* abstention does not apply where Congress has established exclusive federal jurisdiction. *Medema v. Medma Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988).

9

contributions. Drive has not even attempted to explain how resolution of the AG's action will simplify the legal issues and streamline the litigation before this Court. Rather, Drive suggests it will be inconvenienced by litigating in two forums simultaneously and securing additional counsel who is not conflicted. This does not justify a stay.

## CONCLUSION

The Court thus grants Plaintiffs' Motion [150] to file their second amended complaint, attached as Exhibit A to Dkt. 151. The Court also orders that additional fact discovery limited to the depositions and subpoenas that Plaintiffs identified in the parties' Joint Status Report filed October 21, 2022, (dkt. 153), shall be completed by May 1, 2023.

_____
Virginia M. Kendall
United States District Judge

Date: January 3, 2023