IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-2965 |
| v. | ) ) | District Judge Virginia Kendall |
| DRIVE CONSTRUCTION, INC., | ) ) | Magistrate Judge Jeffrey I. Cummings |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Drive Construction, Inc.'s ("Drive") Rule 37(b)(2)(A) motion to bar or otherwise issue sanctions regarding plaintiffs' continued failure to present an adequately prepared Rule 30(b)(6) witness. (Dckt. #133). In short, Drive argues that plaintiffs failed to adequately prepare their Rule 30(b)(6) designee for a second deposition as previously ordered by this Court. Plaintiffs – Trustees of the Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, Chicago Regional Council of Carpenters Apprentice and Training Program Fund, and Chicago Regional Council of Carpenters Supplemental Retirement Fund – have filed a response in opposition to the motion. (Dckt. #148). For the reasons stated below, Drive's motion is denied.

I.  BACKGROUND

Plaintiffs are jointly administered benefit funds created under collective bargaining agreements between the Chicago Regional Council of Carpenters ("Union") and various associations and employers in the construction industry. Plaintiffs filed a complaint against defendant Drive , a party to one such collective bargaining agreement ("CBA"), pursuant to 29

1

U.S.C. §1132 of the Employee Retirement Income Security Act. The CBA between Drive and the Union obligates Drive to make monthly contributions to plaintiffs based on the hours of the type of work covered by the CBA that are completed by Drive employees. Plaintiffs allege that the records they received from Drive were inadequate because Drive paid numerous employees in cash and failed to record or report the payments, thus preventing plaintiffs from adequately calculating the benefits due under the CBA.

### A. The Union's Investigation of Drive

According to the deposition testimony of John Jarger, the Union's Director of Operations, the Union began investigating Drive shortly after it established a task force dedicated to investigating claims of fraud in late 2018. (Dckt. #77-1 at 14). The investigation was prompted by reports from a Union business agent who had heard that Drive routinely paid its employees in cash. (*Id.*). To identify which, if any, Drive employees had received cash payments, Union investigators disseminated a questionnaire for prospective witnesses to complete. (Dckt. #77-1 at 16-19). The Union's attorneys – who are also representing plaintiffs in this matter – used the completed questionnaires to determine whether the person who filled it out "would make a good witness." (*Id.*). If he or she would, counsel conducted a follow-up interview. (Dckt. #76 at 5, 8). From this "core information," counsel created witness declarations, which have been disclosed to Drive, and instructed plaintiffs regarding how they should amend their audits. (Dckt. #77-1 at 20).

### B. The Deposition of John Conklin and the Court's Prior Order

On April 29, 2021, Drive deposed plaintiffs' Rule 30(b)(6) witness, John Conklin. (Dckt. #62-1). On May 4, 2021, Drive filed a motion arguing that plaintiffs had not adequately prepared Conklin to testify because he had no knowledge regarding the Union's investigation of

2

Drive, upon which plaintiffs' claims concerning cash payments and the need for an amended audit had been based. (Dckt. #62). Drive asked that the Court either bar plaintiffs from presenting evidence related to cash payments or order plaintiffs to adequately prepare a witness for an additional Rule 30(b)(6) deposition.

On June 29, 2022, the Court agreed that Conklin's testimony had been inadequate because he was not prepared to testify regarding "all pertinent information gleaned by the Union through its investigation of Drive that supports plaintiffs' amended audit," including "the names of the individuals with claims of cash payments, the hours and dates they worked for Drive, and the amount they allege they were paid." *See Trustees of Chicago Reg. Council of Carpenters Pension Fund v. Drive Constr.*, No. 1:19-cv-2965, 2022 WL 2341290, at *7 (N.D.Ill. June 29, 2022). Consequently, the Court ordered plaintiffs to properly prepare a Rule 30(b)(6) witness to testify on those subjects. *Id.* at *9.

Pursuant to the Court's June 29 Order, Drive resumed its 30(b)(6) deposition on July 20, 2022. (Dckt. 133-1). Conklin again served as plaintiffs' designated witness and the renewed motion to bar followed.

## II.    LEGAL STANDARD

As the Court explained in its June 29 Order, when presented with a deposition notice under Federal Rule of Civil Procedure 30(b)(6), a "named organization must . . . designate one or more . . . persons who consent to testify on its behalf." Fed.R.Civ.P. 30(b)(6). These depositions are substantially different from individual depositions because the witness must be prepared to testify not only regarding matters within his own personal knowledge, but as to matters within the knowledge of the entity as a whole. *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 C 1531, 2011 WL 117048, at *1 (N.D.Ill. Jan. 12, 2011). Accordingly, entities have a duty to "make a

3

conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters." *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 342 (N.D.Ill. 1995), *quoting Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D.Tenn. 1986). Rule 30(b)(6) witnesses need not be perfect, so long as they are "educated and gain the requested knowledge to the extent that it is reasonably available to the entity." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-cv-1047-CRS, 2016 WL 9460471, at *3 (W.D.Ky. June 29, 2016).

"Only if a corporation or governmental agency genuinely is unable to provide an appropriate designee because: it does not have the requested information; cannot reasonably obtain it; and lacks sufficient knowledge after a good faith, thorough review of all available information, will its obligations under Rule 30(b)(6) cease." *Id.* at *4. In that case, where a Rule 30(b)(6) designee "legitimately lacks the ability to answer relevant questions on listed topics and the corporation cannot better prepare that witness or obtain an adequate substitute, then the 'we-don't-know' response can be binding on the corporation and prohibit it from offering evidence at trial on those points." *Id.* at *5 (citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 690 (S.D.Fla. 2012)).

### III. ANALYSIS

Drive now argues that, despite the Court's June 29 Order, Conklin remained unable to testify adequately about the Union's investigation of Drive at his second deposition. Based on this alleged deficiency, Drive again argues that plaintiffs should be barred, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), "from seeking to introduce evidence concerning statements

4

or communications from, with or to witnesses that relate to allegations of unpaid contributions, unreported carpenter work hours, and carpenters being paid in cash." (Dckt. #133 at 7). The Court disagrees.

To begin, the heart of the Court's earlier finding was that plaintiffs could not rely on the Union's investigation to support their amended audit, while at the same time claim to have no information regarding that same investigation. Accordingly, plaintiffs were ordered to prepare their Rule 30(b)(6) witness to testify regarding "all pertinent information gleaned by the Union through its investigation of Drive that supports plaintiffs' amended audit," including "the names of the individuals with claims of cash payments, the hours and dates they worked for Drive, and the amount they allege they were paid." *See Trustees of Chicago Reg. Council of Carpenters Pension Fund*, 2022 WL 2341290, at \*7. Based on its review of the testimony, the Court finds that Conklin adequately testified regarding those subjects during his second 30(b)(6) deposition.

Specifically, Conklin identified the nineteen individuals who have provided information regarding unrecorded work time and cash payments received for work performed for Drive. (Dckt. #133-1 at 5) (testifying that every individual who has made claims of being paid in cash by Drive are listed in plaintiffs' supplemental response to Interrogatory No. 4). Regarding the meetings between Drive employees and Union officials, Conklin testified as follows:

> There were meetings held with these individuals and the attorneys and Alex Perez and Gill Barragan in regards to individuals being paid in cash. . . . I believe three meetings were held. I don't know who was in attendance at each meeting . . . . But during that time, they filled out questionnaires saying what jobs they were working on, how much they were getting paid cash per day, who was giving them the cash, what time period. And from that came your response here, and also the questionnaires turned into declarations throughout time, and the declarations are what were used for the audit.

(*Id.*). Conklin further testified about the projects specific individuals claimed to have worked on and how much they claimed to have been paid for their time. (*Id.* at 7) (testifying about reports

of cash payment by Brandon Santiago); (*Id.* at 9-10) (testifying about reports of cash payment by Josue Aguilar); (*Id.* at 13-14) (testifying about reports of cash payment by Gil Estrada).

Notably, Drive does not allege that Conklin was unable to answer questions regarding any individual's claims of cash payments. Rather, Drive complains that: (1) Conklin did not meet with any of the people involved in the interviews or meetings with Drive employees prior to his second deposition; (2) Conklin's testimony was inconsistent regarding how many meetings Union representatives held with former Drive employees; (3) when Conklin met with plaintiffs' attorneys, he failed to ask them about interviews with Drive employees or review their notes regarding those interviews; (4) Conklin did not know any information communicated by witnesses that was not on the questionnaires; and (5) Conklin did not remember the specific content of each questionnaire. But these complaints are unavailing.

First, Drive's assertion that Conklin failed to meet with any of the people involved in the meetings with Drive employees is wrong. Drive itself acknowledges that Conklin met with the Union's attorneys (who also represent plaintiffs) to prepare for his second deposition. (Dckt. #133 at 4). As plaintiffs rightly note, Conklin was not required to meet with anyone from the Union (a third party), but only to explore plaintiffs' communications – via their attorneys – with the Union that related to the audit. *See, e.g., MiMedx Grp. Inc. v. Fox*, No. 16 C 11715, 2018 WL 11223426, at *3 (N.D.Ill. July 25, 2018) ("We agree with MiMedx that its Rule 30(b)(6) witness was not required to consult with people at CPN [a third party] to testify as to *MiMedx's* knowledge of [communications between Ms. Haden, a MiMedx employee, and CPN]; but, MiMedx was obligated to explore with Ms. Haden that subject as part of the Rule 30(b)(6) preparation.") (emphasis in original).

Second, the Court is not persuaded by Drive's assertion that Conklin was not adequately familiar with the details of meetings between Union investigators and Drive employees. The Court first notes that the information Drive seeks regarding the exact number of meetings between the Union representatives and each individual witness is not known by anyone because no record of meetings was kept by Union investigators. (Dckt. #148 at 2). The Court will also not fault Conklin for ignorance as to the information that "did not make it into the Questionnaires" or that was gathered during interviews when questionnaires were not completed. Drive's earlier motion and the Court's corresponding order related primarily to the questionnaires themselves and the information used to support plaintiffs' amended audit. Again, to that end, Conklin testified regarding the specific claims of cash payment by individual Drive employees. For further insight into the Union's investigation beyond what plaintiffs themselves relied on, Drive can – and, indeed, did – depose Union officials.

Finally, Drive's fixation on the details of the questionnaires and the differences between the questionnaires and their corresponding declarations ignores the fact that – in the same ruling granting Drive's motion for a second Rule 30(b)(6) deposition – this Court found both the questionnaires and notes regarding follow-up interviews to be protected work product. *See Trustees of Chicago Reg. Council of Carpenters Pension Fund*, 2022 WL 2341290, at *4-6 ("[P]laintiffs have met their burden of showing that the questionnaires were prepared in anticipation of litigation and may be considered work product, notwithstanding the fact that they contain factual information and were largely prepared by non-attorneys."). Drive cannot now circumvent that protection by requiring Conklin to recite each questionnaire verbatim.

Instead, after a "good faith, thorough review" of the questionnaires, Conklin was prepared to testify regarding the facts contained within them. This is sufficient. *See MSTG, Inc.*

7

*v. AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 221771, at *2 (N.D. Ill. Jan. 20, 2011) (noting the work-product doctrine "only prevents the disclosure of protected documents or communications . . . not the underlying facts") (citing *Upjohn v. United States*, 449 U.S. 383, 395-96 (1981)). In sum: Rule 30(b)(6) depositions are "not designed to be a memory contest," *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, No. 13 C 50041, 2013 WL 3672964, at *2 (N.D.Ill. July 12, 2013), nor are they "meant to be traps in which the lack of an encyclopedic memory commits an organization to a disadvantageous position," *Brown v. W. Corp.*, No. 8:11CV284, 2014 WL 1794870, at *1 (D.Neb. May 6, 2014). Accordingly, Drive's argument that Conklin fell short by failing to "remember what every questionnaire said," and "who said exactly what," (Dckt. #133 at 5), is without merit.

Accordingly, the Court will not prohibit plaintiffs from introducing evidence at summary judgment or trial related to allegations of unpaid contributions resulting from alleged cash payments to Drive's employees, nor will it grant Drive's request for the fees incurred in preparing the instant motion or convening the second Rule 30(b)(6) deposition of Conklin.

## CONCLUSION

For the foregoing reasons, Drive's Rule 37(b)(2)(A) motion to bar or otherwise issue sanctions regarding plaintiffs' continued failure to present an adequately prepared Rule 30(b)(6) witness. (Dckt. #133), is denied.

**ENTERED:   January 25, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**

8