**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TRUSTEES OF THE CHICAGO )
REGIONAL COUNCIL OF )
CARPENTERS PENSION FUND, et al., )
                           )
        **Plaintiffs,** )
                           )     **No.  1:19-cv-2965**
        **v.** )
                           )     **District Judge Virginia Kendall**
DRIVE CONSTRUCTION, INC., )
                           )     **Magistrate Judge Jeffrey I. Cummings**
        **Defendant.** )
                           )

## MEMORANDUM OPINION AND ORDER

Plaintiffs – Trustees of the Chicago Regional Council of Carpenters Pension Fund,

Chicago Regional Council of Carpenters Welfare Fund, Chicago Regional Council of Carpenters

Apprentice and Training Program Fund, and Chicago Regional Council of Carpenters

Supplemental Retirement Fund – have filed a motion for rule to show cause why AVE Imports

LLC ("AVE"), a non-party, should not be held in contempt of court after failing to comply with

a subpoena duces tecum seeking documents related to AVE's business.  (Dckt. #143).  AVE filed

a response on November 30, 2022, (Dckt. #181), to which plaintiffs replied on December 8,

2022, (Dckt. #183).[1]  As explained below, plaintiffs' motion is granted in part and denied in part.

**I.  BACKGROUND**

    **A.  Plaintiffs' Second Amended Complaint**

Plaintiffs are jointly administered benefit funds created under collective bargaining

agreements between the Chicago Regional Council of Carpenters ("Union") and various

---

[1] The Court also granted plaintiffs leave to file a supplement to their motion.  (Dckt. ##184, 185).

associations and employers in the construction industry.  Plaintiffs filed a complaint against defendant Drive Construction, Inc. ("Drive"), a party to one such collective bargaining agreement ("CBA"), pursuant to 29 U.S.C. §1132 of the Employee Retirement Income Security Act.  The CBA between Drive and the Union obligates Drive to make monthly contributions to plaintiffs based on the hours of the type of work covered by the CBA that are completed by Drive employees.  Plaintiffs allege that the records they received from Drive were inadequate because Drive paid numerous employees in cash and failed to record or report the payments, thus preventing plaintiffs from adequately calculating the benefits due under the CBA.

Plaintiffs' cash payment theory has evolved and clarified as discovery has progressed and, on January 3, 2023, the District Court granted plaintiffs' motion to file a Second Amended Complaint ("SAC") to incorporate their updated allegations.  (Dckt. #188).  The SAC "centers on the dealings of three brothers – Gerardo, Eduardo, and Jesus Cortez."  (*Id.* at 2).  Gerardo is Drive's President, Eduardo is Drive's Secretary and Chief of Operations, and Jesus was a Drive employee at the operative time.  (Dckt. #190 at ¶¶9, 12).  Jesus formed the company Cortez Accurate Construction, LLC, in 2014.  (*Id.* at ¶10).  That company was dissolved in 2015.  (*Id.* at ¶11).  Accurate Construction LLC ("Accurate") was subsequently formed in 2016.  (*Id.*).  Kelly Byrne – the former Vice President of Cortez Accurate Construction, LLC – was registered as its sole member.  (*Id.*).

In their SAC, plaintiffs added Accurate as a defendant and allege that it "was nothing but a paper company that the Cortez brothers controlled and treated as an alter ego of Drive in their construction business."  (Dckt. #188 at 3).  Plaintiffs further assert that Drive and Accurate used various other entities – owned by current and former Drive employees – to transfer the funds that were used to pay carpenters outside of the scope of Drive's contracts with plaintiffs.  (*Id.* at

¶¶18-21).  These entities (collectively, the "Drive Agent Entities") include Infinity Construction, LLC; Infinity Construction FRG 67, LLC; R & L Construction of Illinois, Inc.; and A Lara Construction, Inc.

**B.    AVE Imports LLC**

AVE is an Illinois company "in the business of importing and distributing spirits."  (Dckt. #181 at 1).  Its sole managing member is Eduardo Cortez, who, as noted above, is also a current officer/employee of Drive.  Cancelled checks attached to plaintiffs' motion establish that Accurate paid AVE approximately $370,000 between 2016 and 2019.  (Dckt. #143 at 2; Dckt. #143-2).  During that same period, cancelled checks further establish that AVE paid Accurate approximately $134,000.  (*Id.*).  Two of AVE's registered addresses are also used by Drive. (Dckt. #143 at 2).  Moreover, all three companies – AVE, Accurate, and Drive – are represented by the same counsel in this matter.  (*Id.*).

**C.    The depositions of Francisco Guel**

Two of the Drive Agent Entities cited above (the Infinity LLCs) are owned by Francisco Guel, a former Drive superintendent who is accused by plaintiffs of paying Drive employees in cash.  Plaintiffs deposed Guel on January 13, 2021.  On November 2, 2022, this Court ordered Guel to sit for a second deposition because evidence presented by plaintiffs after his deposition indicated that his testimony was inaccurate and evasive – an assertion Guel did not dispute. (Dckt. #161).  This included a statement written by Guel on June 27, 2022, in which he asserts that he paid Drive employees in cash to work on non-Union jobs unrelated to Drive.  (Dckt. #141-1).

Guel's second deposition was taken on November 29, 2022.  Guel testified that he and Jesus Cortez stole checks from a now-deceased Drive employee, Gerry Ayala, which they then

deposited into Accurate's bank account without the knowledge or consent of Drive. (Dckt. #181 at 4). Guel further testified that he used the stolen funds to pay workers to conduct side jobs run through Infinity Construction. (*Id.*). According to Guel's testimony, when he and Jesus needed additional funding for their operation, Jesus would ask Eduardo to lend Accurate money from AVE. (Dckt. #184-1 at 4). Guel testified that these payments from AVE were loans, although there was no loan agreement between AVE and Accurate and he could not recall whether Accurate ever repaid AVE. (*Id.*). For its part, AVE concedes that checks were exchanged between itself and Accurate, (Dckt. #181 at 4), and it does not contest the authenticity of the checks showing that Accurate paid AVE nearly three times as much ($370,000) as AVE paid Accurate ($134,000) between 2016 through 2019. Moreover, AVE offers no explanation for the asymmetric payments between itself and Accurate and the record before the Court contains no basis from which a logical explanation can even be hypothesized.[2]

### D.    Plaintiff's subpoena to AVE Imports LLC

Plaintiffs subpoenaed AVE on July 27, 2022, seeking a variety of documents related to AVE's business dealings for the purpose of helping them determine whether there is an alter ego/single employer relationship between Drive and Accurate. (Dckt. #183 at 3). AVE communicated several objections regarding the relevancy and scope of the requests during a phone conversation with plaintiffs' counsel on August 5, 2022. (Dckt. #143 at 2). On August 11, 2022, AVE responded to the subpoena by producing its Articles of Organization and objecting to the remainder of plaintiffs' requests. (Dckt. #143-3). That same day, AVE's counsel informed plaintiffs that AVE was open to discussing its objections further. (Dckt. #181

---

[2] The Court further notes that Cortez invoked his Fifth Amendment privilege against self-incrimination during his November 10, 2022 deposition when he was asked any questions about AVE, including questions about the payments between AVE and Accurate referenced above. (Dckt. #183 at 3).

at 2). Rather conferring further, however, plaintiffs filed the instant motion on October 14, 2022. (*Id.* at 2). Nonetheless, the parties continued to confer regarding AVE's objections and suggested limitations to the subpoena rider but they were unable to reach an agreement. (Dckt. #181 at 6-7; Dckt. #181-5).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs subpoenas directed to non-parties. "The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D.Ill. Jan. 2, 2008). Accordingly, parties may seek discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" through a Rule 45 subpoena. Fed.R.Civ.P. 26(b)(1). That said, the ability to use subpoenas to obtain information from non-parties is not unlimited, and the issuing party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(d)(1). Thus, non-parties must be protected "from significant expense resulting from compliance." Fed.R.Civ.P. 45(d)(2)(B)(i), (ii). Courts resolve discovery disputes in their discretion by adopting a liberal interpretation of the discovery rules. *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018).

## III. ANALYSIS

### A. AVE must provide the documents sought in plaintiffs' subpoena.

Plaintiffs seek an order compelling AVE to provide a response to four of the requests in their subpoena rider.[3] The Court will address each in turn, bearing in mind that AVE's status as

---

[3] There is some confusion as to which requests in plaintiffs' subpoena rider remain at issue. In its response, AVE suggested that only three requests were outstanding: Revised Rider Requests 6, 7, and 9. (Dckt. #181 at 3). But plaintiffs assert in their reply that Revised Rider Requests 3, 5, 6, and 9 are at

a non-party "is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D.Ill. 2013); *see also Cusumano v. Microsoft Corp.*, 162 F3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

Before turning to the specific requests, however, the Court will address an argument underpinning all of AVE's objections. Namely, AVE contends that the "basis for plaintiffs' case that Drive and Accurate were in cahoots was debunked" by Guel's testimony that: (1) he and Jesus stole $2.3 million from Drive; (2) they used that money to pay workers to complete non-union side jobs; and (3) Jesus' brother, Eduardo, lent them money from AVE to subsidize this scheme. (Dckt. #181 at 4). AVE suggests that this testimony renders irrelevant any evidence related to its business records. The Court disagrees.

Even presuming that Guel's testimony could be understood to provide support for AVE's assertion that Drive and Accurate were not in cahoots, plaintiffs are not barred from seeking evidence from AVE to support their theory as to how AVE, Accurate, and Drive are connected. Thus, these admissions by Guel – who, notably, has previously provided inaccurate testimony in this same case – do not prevent plaintiffs from seeking discovery related to other potential explanations for the payments between Accurate and AVE. *See* Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). Furthermore, the District Court recently made clear that it does not consider plaintiffs' theory regarding the connection between Drive and Accurate to have been "debunked." Indeed, when granting plaintiffs' motion to file the SAC to add Accurate as a

---

issue. (Dckt. #183 at 3-4; Dckt. #181-5 at 3-4). The Court will presume that the requests identified in plaintiffs' reply remain in dispute.

defendant under the alter ego/single employer theory, the Court noted that the information uncovered in discovery regarding the connection between Accurate and Drive constituted a "bona fide change in circumstances." (Dckt. #188 at 5). The Court further found that justice required granting leave to file the amendment, despite the fact that it would require additional discovery. (*Id.* at 7). Accordingly, Guel's most recent testimony does not require the denial of plaintiffs' motion outright, as AVE wrongly asserts.

As to the specific documents sought by plaintiffs, the Court finds for the following reasons that AVE must comply with each request in full and that it must do so by February 10, 2023.

### 1. AVE must disclose its payroll records from January 2016 through the present.

First, plaintiffs seek AVE's employee payroll records. (Dckt. #183 at 6; Dckt. #181-4 at 5). AVE initially objected to this request as overbroad and suggested that it be narrowed to records concerning AVE employees who have also worked for Drive. (Dckt. #181-4 at 3). It is unclear whether AVE has since responded to the request, as it was not cited by AVE as one of the three it declined to respond to. (Dckt. #181 at 3). Nonetheless, in the event AVE has not responded, the Court finds that it must do so. AVE's proposed limitation would unduly restrict the scope of the request, as it would prevent plaintiffs from determining whether AVE has issued payments to carpenters who are not on Drive's *official* payroll. This is particularly relevant here, as plaintiffs have presented evidence to suggest that at least one individual – Eduardo Medina – *was* paid by Drive for carpentry work despite never having appeared in Drive's payroll records. *See Tr. of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 1:19-cv-2965, 2022 WL 2193556, at *3-5 (N.D.Ill. June 17, 2022).

2.    **AVE must disclose its banking and currency exchange records from January 2016 to the present.**

Plaintiffs next seek production of AVE's "banking and currency exchange records, including but not limited to, signature cards, statements, records of deposits and withdrawals, and all check registers." (Dckt. #181-5 at 3). AVE suggested that this request should be narrowed to records "that reflect a payment to or from AVE and either Drive [or] Accurate." (Dckt. #181-4 at 3). Again, this proposed limitation is unduly restrictive.

As explained above, plaintiffs assert that in order to circumvent its obligations under the CBA, Drive has systematically transferred money – via Accurate – to various Drive Entities established by current and former Drive employees. (Dckt. #190 at 5). Plaintiffs further allege that the individuals running these entities "converted the payments received from Accurate into cash or money orders, typically at currency exchanges, and would deliver cash or money order payments to carpenters employed by Drive as wages." (*Id.* at 5). Plaintiffs seek to determine whether AVE is one of these "Drive Entities." To make that determination, they need access to the company's full banking records, and not only those reflecting payments to or from Drive and Accurate.

Plaintiffs' need for AVE's complete banking records is also supported by evidence of the substantial – and, as yet, unexplained – discrepancy between what AVE paid Accurate and what Accurate paid AVE between 2016 and 2019. Once more, Guel's testimony that he and Jesus borrowed money from AVE to fund Accurate, (Dckt. #184-1 at 4), does not explain why AVE *received* nearly three times *more* money from Accurate ($370,000) than it supposedly loaned to Accurate ($134,000). Discovery of AVE's full bank records will assist plaintiffs in understanding the nebulous nature of the financial relationship between Accurate and AVE.

8

3. **AVE must disclose the state and federal tax returns and all Schedule K-1's for its individual members from January 2016 to the present.**

Under Revised Rider Request 6, plaintiffs seek state and federal tax returns and all Schedule K-1's (Form 1065) for AVE's individual members. (Dckt. #181-4 at 5). AVE contends that this request is overbroad and it asserts that plaintiffs' "unbridled requests seeking the entirety of AVE's . . . federal and state tax information is not relevant to whether Accurate Construction is the alter ego of Drive Construction." (Dckt. #181 at 6). AVE further asserts that this request should be limited to require production of returns only to the extent that they "reflect ownership by AVE in either . . . Drive or Accurate." (*Id.* at 3). The Court disagrees. As plaintiffs have noted, (Dckt. #183 at 3), there are multiple connections between AVE, Accurate, and Drive and plaintiffs are entitled to the financial records in question to test their theory that AVE was one of the Drive Agent Entities that was used as part of a scheme to assist Drive in avoiding its contribution obligations under the CBA. *See, e.g., Dugan v. J. Pease, Inc.*, No. 07 C 407, 2007 WL 9815644, at *2-3 (N.D.Ill. May 9, 2007).

4. **AVE must disclose any correspondence and communications on behalf of AVE with representatives, agents, and employees of Drive and/or Accurate from January 2016 to the present.**

Finally, plaintiffs seek all "[c]orrespondence and communications on behalf of AVE Imports with representatives, agents, and employees of [Drive] and/or [Accurate]." (Dckt. #181-5 at 4) (emphasis in original). AVE responded that this request was also overbroad because Eduardo Cortez is the member and manager of AVE, as well as an employee of Drive. (Dckt. #181 at 7). AVE asserts that this request should be limited to communications by Eduardo on behalf of AVE solely from Eduardo's AVE email address to and from representatives, agents and employees of Drive and Accurate that address the issues in the Amended Complaint. (*Id.*).

The Court disagrees in two respects.  First, AVE must produce all correspondence and communications on behalf of AVE with representatives, agents, and employees of Drive and Accurate, and not simply the communications that involve Eduardo.[4]  Second, such correspondence and communications must be produced even if they do not involve Eduardo's AVE email address.  According to the SAC, plaintiffs have uncovered at least one instance where a client requested a bid from *Accurate* by contacting an employee of Drive via his *Drive* email address.  (Dckt. #190 at 5) (alleging a developer contacted Jesus Cortez at jcortez@driveconstruction.com to ask that Accurate submit proposals for a project).  In light of allegations that Drive employees use Drive email addresses when conducting business for other entities, the Court will not narrow plaintiffs' request to communications sent only from AVE email addresses.  Emails from Eduardo's Drive account must also be disclosed, so long as they were sent *on behalf of AVE* to representatives, agents, and employees of Drive or Accurate.

### B.    Plaintiffs have failed to show that AVE should be held in civil contempt.

Plaintiffs assert that AVE should be held in civil contempt based on its failure to fully comply with their subpoena.  Under Rule 45(g), it is true that the district court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."  Fed.R.Civ.P. 45(e); *S.E.C. v. Hyatt*, 621 F.3d 687, 691 (7th Cir. 2010).  However, the Seventh Circuit cautioned that "contempt motions for noncompliance with a discovery subpoena should be entertained with special attention to the procedural and substantive rights of the nonparty witness."  *Hyatt*, 621 F.3d at 694.  Moreover, "intervening court involvement is required prior to initiation of contempt proceedings *if the recipient of the subpoena serves a*

---

[4] AVE asserts that there are likely thousands of emails between Eduardo and other employees of Drive since 2016.  (Dckt. #181 at 7).  To be clear, these emails must be produced only to the extent that they were exchanged *on behalf of* AVE.

10

*written objection* on the party or attorney designated in the subpoena." *Id.* (emphasis added).
Once the party serving the subpoena receives a written objection, it may move "for an order
compelling production or inspection," which "may be required only as directed in the order."
Fed.R.Civ.P. 45(d)(2)(B)(i), (ii).

While plaintiffs acknowledge that properly submitted objections constitute an "adequate
excuse," they argue that "a response deemed to be inadequate by the Court should not be
consider[ed] excusable." (Dckt. #183 at 2). Because AVE's objections were baseless
boilerplate, plaintiffs suggest they were not required to file a motion to compel before moving
that AVE be held in contempt. (*Id.*). The Court disagrees.

Neither *Hyatt* nor any other authority of which this Court is aware stands for the
proposition that properly submitted objections are not excusable simply because they were later
found to be unpersuasive by the court. Moreover, the Court finds that AVE's objections – while
ultimately unavailing – were not frivolous and were arguably more reasonable at the time they
were made, which was *before* Accurate was added as a defendant under plaintiffs' alter
ego/single employer theory. Finally, even in cases where a party failed to submit written
objections to a subpoena – thus eliminating the *requirement* that the subpoenaing party file a
motion to compel before moving for contempt – courts have found that "the more prudent
practice for the court is to issue such an order before entertaining a motion for contempt." *Hyatt*,
621 F.3d at 569; *Sprint Sols, Inc. v. iCell Guru, Inc.*, 310 F.R.D. 563, 569 (N.D.Ill. Oct. 20,
2015) (same). Such a prudent course of action is particularly appropriate where, as here, counsel
for the subpoenaed third-party offered to discuss its objections further after submitting them.
(Dckt. #181 at 2). Accordingly, the Court declines to hold AVE in contempt and it will treat
plaintiffs' motion as a motion to compel as plaintiffs suggest. (*See* Dckt. #183 at 3).

**C.     The Court will not order AVE to pay plaintiffs' attorney's fees and costs.**

Finally, plaintiffs seek an award of the attorney's fees and costs that they incurred in bringing this motion.  Pursuant to Rule 37(a), the Court in its discretion may order the opposing party to pay the moving party's reasonable expenses when a motion to compel is granted but it will not do so if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed.R.Civ.P. 37(a)(5)(A); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 959-960 (N.D.Ill. 2021).   Because plaintiffs' motion was granted only in part and was filed before plaintiffs fully exhausted efforts to reach an agreement with AVE, an award of fees and costs is unwarranted.  Should AVE fail to comply with this order, however, it is within the Court's power to reconsider plaintiffs' request for fees.  *Boehm v. Scheels all Sports, Inc.*, 15-cv-379-jdp, 2016 WL 6124503, at *1 (W.D.Wis. Oct. 20, 2016) (after staying request for sanctions pending the outcome of subsequent discovery, court granted sanctions when non-parties again failed to comply with subpoena despite court order).

## CONCLUSION

For the above reasons, plaintiffs' motion for a rule to show cause why AVE should not be held in contempt, (Dckt. #143), is granted in part and denied in part.  AVE is ordered to supplement its response to plaintiffs' subpoena, as outlined herein, by February 10, 2023.


**ENTERED:   January 26, 2023**


**Jeffrey I. Cummings**
**United States Magistrate Judge**