**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TRUSTEES OF THE CHICAGO** | ) | |
| **REGIONAL COUNCIL OF** | ) | |
| **CARPENTERS PENSION FUND, et al.,** | ) | |
| | ) | **No 19-cv-2965** |
| **Plaintiffs,** | ) | |
| | ) | **District Judge Virginia Kendall** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **DRIVE CONSTRUCTION, INC. and** | ) | |
| **ACCURATE CONSTRUCTION, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Before the Court upon referral from the District Court is plaintiffs' motion to strike defendant Drive Construction, Inc.'s third-party complaint, (Dckt. #226), which has been joined and adopted by defendant Accurate Construction, (Dckt. #241), and third-party Franciso Guel, (Dckt. #234). For the reasons set forth below, the Court respectfully recommends that the District Court grant plaintiffs' motion to strike.

I.       BACKGROUND

A.       **Plaintiffs' Claims Against Drive Construction and Accurate Construction**

Plaintiffs are jointly administered benefit funds created under collective bargaining agreements between the Chicago Regional Council of Carpenters ("Union") and various associations and employers in the construction industry. Plaintiffs initially filed a complaint against defendant Drive Construction, Inc. ("Drive"), a party to one such collective bargaining agreement ("CBA"), pursuant to 29 U.S.C. §1132 of the Employee Retirement Income Security Act (ERISA). The CBA between Drive and the Union obligates Drive to make monthly contributions to plaintiffs based on the hours of the type of work covered by the CBA that are

completed by Drive employees. Plaintiffs alleged that the records they received from Drive were inadequate because Drive paid numerous employees in cash and failed to record or report the payments, thus preventing plaintiffs from adequately calculating the benefits due under the CBA. In their initial complaint, plaintiffs sought an order compelling Drive to produce all books and records dating back to January 1, 2016, so that the proper amount owed under the CBA could be determined. After Drive produced its books and records, plaintiffs amended the complaint for the first time to reflect the results of their audit, and alleged that Drive had failed to submit $574,123.70 of contributions due under the CBA. (Dckt. #29).

Plaintiffs' cash payment theory evolved further as discovery progressed and, on January 3, 2023, the District Court granted plaintiffs' motion to file a Second Amended Complaint ("SAC") to incorporate their updated allegations. (Dckt. #188). The SAC "centers on the dealings of three brothers – Gerardo, Eduardo, and Jesus Cortez." (*Id.* at 2). Gerardo is Drive's President, Eduardo is Drive's Secretary and Chief of Operations, and Jesus was a Drive employee at the operative time. (Dckt. #190 at ¶¶9, 12). Jesus formed Cortez-Accurate in 2014. (*Id.* at ¶10). That company was dissolved in 2015, (*Id.* at ¶11), and Accurate Construction LLC ("Accurate") was subsequently formed in 2016. (*Id.*).

In their SAC, plaintiffs added Accurate as a defendant and allege that it "was nothing but a paper company that the Cortez brothers controlled and treated as an alter ego of Drive in their construction business." (Dckt. #188 at 3). According to plaintiffs, Drive and Accurate "commingled funds and did not maintain an arms-length relationship." (Dckt. #190 at ¶14). Plaintiffs also alleged that: in 2018 and 2019, over $2,000,000 in checks made out to Drive were deposited into Accurate's bank account; Accurate routinely made payments to Eduardo, Jesus,

and other Drive employees; and that Eduardo deposited money into Accurate's bank account. (*Id*.).

Plaintiffs further assert that Drive and Accurate used various other entities – owned by current and former Drive employees, including Franciso Guel ("Guel") – to transfer the funds that were used to pay carpenters outside of the scope of Drive's contracts with plaintiffs. (*Id.* at ¶¶18-21). Specifically, Guel and others "converted the payments received from Accurate into cash or money orders, typically at currency exchanges, and would deliver cash or money order payments to carpenters employed by Drive as wages" at rates well under the requirements of the CBA. (*Id*. at ¶¶20, 22).

According to plaintiffs, Drive used Accurate and Accurate's payments to the Drive-related entities to avoid wage and benefit obligations of the CBA, but now to the tune of $9,134,735.10 in unpaid contributions. (*Id*. at ¶¶21, 37). In the SAC, plaintiffs bring two counts pursuant to ERISA for unpaid contributions: Count I against Drive and Count II against Accurate under the alter ego and/or single employer doctrines.

### B.      Drive's Claims Against Accurate, Francisco Guel, and Jesus Cortez

In its answer to the SAC, Drive denies any connection or common ownership with Accurate, asserts counterclaims against plaintiffs, and – relevant to the instant motion – purports to assert "third party claims" for conversion against Accurate, Jesus Cortez, and Francisco Guel pursuant to 28 U.S.C. §1367 as arising from the same case or controversy. (Dckt. #223 at 31-33). Specifically, Drive alleges that Jesus and Guel, both agents of Accurate, were operating through Accurate "to perform *non-union jobs* . . . [and] often used Union carpenters to perform the work as *side jobs* and paid the carpenters in cash or money orders for the work." (*Id*. at ¶9; Dckt. #213 at Ex. A – Guel Declaration) (emphasis added). According to Drive, between 2018

and 2019, Guel "sometimes took checks from Drive's offices that had been made payable to Drive" and – without permission – those checks, were then endorsed to Accurate and deposited into Accurate's bank accounts by Jesus. (Dckt. #223 at ¶9). Drive alleges that at least 30 checks made out to Drive in the amount of $2,332,088.67 were unlawfully converted by Accurate, Jesus, and Guel. (*Id*. at ¶12). In its claim, Drive again alleges that "Drive and Accurate were separate companies with no common ownership, and neither Drive nor its owner ever benefitted financially as a result of Accurate Construction's business activities." (*Id*. at 10).

## II.   ANALYSIS

Plaintiffs – joined by Accurate and Guel – have moved to strike Drive's purported "third-party claim" for conversion against them, arguing initially that it is improper under Federal Rule of Civil Procedure 14 because it is not derivative of Drive's potential liability to plaintiffs for delinquent contributions. In response, Drive concedes that it "incorrectly characterized" its claim for conversion as a third-party claim but nonetheless asserts that it instead has properly asserted its crossclaim against Accurate under Rule 13(g), and properly joined Guel and Cortez under Rule 13(h). [1] (Dckt. #239 at 1, n.1). Drive thus disputes that Rule 14 is even at issue here but – even if it was – contends that its claim for conversion is proper under that Rule as well. Plaintiffs reply, arguing that Drive's attempt to convert its mislabeled third-party claim for conversion to a crossclaim in its response brief is improper and, even still, Drive's conversion claim remains improper under both Rule 13 and Rule 14 and must be stricken.[2]

---

[1] Jesus Cortez has filed a separate motion to dismiss Drive's claim for conversion against him, (Dckt. #217), also arguing, *inter alia*, that it is improper under Rule 14. Jesus' motion has been separately briefed and is pending before the District Court.

[2] While plaintiffs may lack standing to attack Drive's crossclaim under Rule 13, *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 429 F.Supp.2d 1274, 1291 (M.D.Fla. 2005) (finding that plaintiff did not have standing to seek dismissal of a cross-claim by one defendant against another), Accurate and Guel have joined and adopted plaintiffs' motion, so this issue is properly before the Court.

4

At the outset, as Drive urges, the Court will not strike its claim for conversion simply because it may have been "incorrectly characterized." Instead, the Court will construe Drive's claim so as to do justice," Fed.R.Civ.P. 8(f), and find – as other courts have held – that the "mislabeling of [a] claim . . . is not, by itself a basis for dismissal." *Legion Ins. Co. v. Fam. Serv., Inc.*, 561 F. Supp. 2d 232, 236 (D.R.I. 2008); *but see Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C 04-2000 CW, 2006 WL 2975587, at *5 (N.D.Cal. Oct. 18, 2006) (striking a mislabeled third-party complaint). Accordingly, the Court does not strike Drive's conversion claim solely because it was mislabeled but will instead consider that claim on the merits to determine if it is appropriately pled against Accurate and/or Guel under either Rule 13 or Rule 14, as Drive so contends. *See Travelers Cas. & Sur. Co. of Am. v. Martin*, No. 7:14-CV-2286-JEO, 2016 WL 6542733, at *8 (N.D.Ala. Sept. 6, 2016), *report and recommendation adopted in part, rejected in part on other grounds*, No. 7:14-CV-2286-JEO, 2016 WL 6522739 (N.D.Ala. Nov. 3, 2016) (noting that claims "would not be subject to dismissal simply because they have been mislabeled as 'third-party claims'" and proceeding to consider whether the claims were proper under Rule 13); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("One objective of Rule 8 is to decide cases fairly on their merits, not to debate finer points of pleading where opponents have fair notice of the claim or defense.").

Before turning to the propriety of Drive's claims, however, the Court clarifies the scope of its analysis given the plain language of Rules 13 and 14 and their applicability to the parties at issue. Under Rule 13 (governing counterclaims and crossclaims), a party may "state as a crossclaim any claim by one party against a *coparty* if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim." Fed.R.Civ.P. 13(g) (emphasis added). Moreover, as Drive properly notes, Rule 13(h) allows for the

5

permissive joinder of additional parties to the crossclaim where appropriate under Rule 20. *See* Fed.R.Civ.P. 20(a)(2). However, the "weight of authority holds that Rule 13(h) cannot be used to assert a counterclaim or crossclaim solely against an unnamed party." *AllTech Commc'ns, LLC v. Bros.*, 601 F. Supp. 2d 1255, 1260 (N.D. Okla. 2008). It follows that to the extent Drive's crossclaim against Accurate is improper, its crossclaim against Guel (or against Cortez for that matter) cannot stand.[3] As explained in detail below, *infra* at Section II.A., the Court concludes that Drive's crossclaim against Accurate does *not* arise out of the same transaction or occurrence under Rule 13, and thus it need not address whether Drive's claim against Guel is proper under Rule 20.

As for Rule 14 (which governs third-party claims), it applies only to *nonparties* and, as such, is clearly inapplicable to Accurate, a co-defendant and party to this matter. *See, e.g., McCarthy v. Fuller*, No. 1:08-CV-994-WTL-DML, 2010 WL 2243354, at *2 (S.D.Ind. June 1, 2010) ("Rule 14(a)(1) is inapplicable, because that rule applies to third-party defendants (i .e. 'a nonparty . . .')"); *Latuska v. Bureau Veritas N. Am., Inc.*, No. 3:15-CV-208, 2017 WL 1102651, at *3 (W.D.Pa. Mar. 23, 2017) ("Rule 14 would be inapplicable because it applies to nonparties only."). Accordingly, the Court need only determine whether Drive's claim against Guel is a proper third-party claim under Rule 14, which, as explained below, *infra* at Section II.B., it is not.

### A. Drive's Crossclaim for Conversion Against Accurate is Improper under Rule 13.

Rule 13 provides, in relevant part:

A pleading may state as a crossclaim any claim by one party against a coparty *if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim*, or if the claim relates to any property that

---

[3] But again, Cortez' motion to dismiss is pending before the District Court Judge and this Court's recommendation extends only to Guel.

> is the subject matter of the original action. The crossclaim may include a claim
> that the coparty is or may be liable to the crossclaimant for all or part of a claim
> asserted in the action against the crossclaimant.

Fed.R.Civ.P. 13(g) (emphasis added). "The standard for determining whether a crossclaim arises

out of the same transaction or occurrence is the same standard used to identify a compulsory

counterclaim." *Bar Plan Mut. Ins. Co. v. Moyer L. Firm, P.C.*, No. 119CV02310RLYMPB,

2020 WL 8665841, at *2 (S.D.Ind. Feb. 24, 2020) (citing 6 Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure §1432 (3d ed. 2017)). Under this standard, courts use a

"logical relationship test" to determine whether two matters arise out of the same transaction or

occurrence for purposes of Rule 13. *Bd. Of Regents of Univ. Of Wisconsin Sys. v. Phoenix Int'l

Software, Inc.*, 653 F.3d 448, 470 (7th Cir. 2011). As the 7th Circuit has explained:

> The approach is necessarily flexible . . . a court should consider the totality of the
> claims, including the nature of the claims, the legal basis for recovery, the law
> involved, and the respective factual backgrounds.

*Id.* (internal quotations omitted). The purpose behind Rule 13 "is judicial economy; to avoid a

multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common

factual background." *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994).

Here, Drive contends that its claim for conversion arises out of the same transaction or

occurrence as plaintiff's claims in the SAC and is thus appropriate under Rule 13. In doing so,

Drive focuses on plaintiffs' allegations in the SAC that: (1) Drive and Accurate are alter egos;

and (2) that over $2 million in checks made out to Drive were deposited into Accurate's bank

account. Paired with Guel's apparent deposition testimony that he took checks from Drive

without permission, Drive contends that the "taking of the checks from Drive has become a key

issue" in the SAC and that the "question of [the] authority to do so is common to all defendants."

(Dckt. #239 at 2, 3). Under the standard above, the Court respectfully disagrees.

To begin, Drive may be correct that the authority – or rather lack thereof – of Accurate and its agents to deposit Drive's checks into Accurate's accounts might be a "common fact" relevant to plaintiffs' ERISA claim for unpaid contributions and Drive's conversion claim. But this is where the requisite synchronicity of the two claims ends.

On the one hand, plaintiffs bring a federal statutory claim under ERISA to recover unpaid contributions from Drive, a signatory to the CBA -- and potentially Accurate as its alter ego – for work performed by Drive employees on Drive's *union* jobs covered by the CBA. And, through discovery, plaintiffs have further developed their theory as to how Drive engaged in a scheme to avoid paying those contributions by paying cash to carpenters working on Drive's union jobs. In its simplest form, plaintiffs now contend that Drive deposited at least $2 million into the accounts of its alter ego Accurate, and then ultimately used those funds to pay Drive employees working on *union* jobs in cash to avoid paying the contributions required by the CBA between plaintiffs and Drive.

On the other hand, Drive asserts a state common law claim for conversion against Accurate. Accepting Drive's allegations as true, as is required, *see Hodges v. Archer-Daniels-Midland Co.*, No. 17-CV-2087, 2019 WL 10447013, at *1 (C.D.Ill. Feb. 14, 2019) (*citing Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016)), Drive alleges that Accurate – through its agents Guel and Cortez – stole Drive's checks, deposited them into Accurate's accounts, and then used those funds to pay carpenters performing work on "non-union," non-Drive, "side jobs." (Dckt. #223; Dckt. #213-1 at 2 – Guel Decl. (describing his work on non-union jobs all "outside of Drive Construction without Drive's knowledge."). Moreover, Drive denies all connection to Accurate and that it "ever benefitted financially" as a result of Accurate's business activities.

Given these facts and the nature of the parties' respective claims, the Court cannot agree that they arise out of the same transaction or occurrence. *Bd. of Regents*, 653 F.3d at 470. Simply put, the converted funds – allegedly used for payment to carpenters for work on non-union, non-Drive jobs – have no bearing on the plaintiffs' right to recover unpaid contributions from Drive under the CBA for the carpenters' work on Drive's union jobs. In other words, even if Drive could prove that Accurate and its agents stole over $2 million, it would not affect plaintiffs' right to recover unpaid contributions from Drive, nor would it provide Drive with a valid defense to plaintiffs' claims under ERISA. *See NECA-IBEW Welfare Tr. Fund v. Ernie's Elec. Co.*, No. 10-CV-2046, 2012 WL 5604023, at *6 (C.D.Ill. Nov. 15, 2012) (describing permissible defenses to claims for unpaid contributions under ERISA).

Like plaintiffs, the Court finds the case of *Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare, & Vacation Fund, & Finishing Trades Inst. v. Petric & Assoc., Inc.*, No. CIV.A. 13-1947 SDW, 2015 WL 273653, at *1 (D.N.J. Jan. 22, 2015), to be particularly instructive. There, plaintiffs brought a claim pursuant to ERISA for, *inter alia*, unpaid contributions against defendants Conti Enterprises, Inc. and Petric & Associates, Inc., with which Conti had entered a subcontract to furnish labor and materials. In response to the ERISA complaint, Petric filed a ten-count crossclaim against Conti asserting various breaches of the subcontract. In turn, Conti filed a crossclaim against Petric also asserting breach of the subcontractor agreement. The plaintiff funds then moved to strike the crossclaims as not arising out of the same transaction or occurrence as required by Rule 13.

The *Petric* court applied the "logical relationship test" and ultimately agreed the claims were improper. In doing so, the Court found that:

(1)    The proofs that would be required to support Petric's contentions at trial differ in nature and volume from the proofs that would be required to litigate Plaintiffs' claims;

(2)    The extensive facts relating to Petric's crossclaims could potentially confuse the factfinder at trial;

(3)    While, if accepted as true, Conti's alleged breach of the Subcontract may have caused Petric severe economic hardship, the breach of an ancillary contract does not provide a legally cognizable defense to an action brought under ERISA to collect delinquent trust fund contributions; and

(4)    Public policy favors simplified trust fund collection litigation.

*Petric*, 2015 WL 273653, at *4.

The reasoning in *Petric* is persuasive.  Not only would different proofs be required to support plaintiffs' unpaid contribution claim and Drive's conversion claim, but inserting that separate claim into this already protracted litigation would pose a substantial risk of confusing the finder of fact.  And, again, Drive's conversion claim does not provide Drive with a defense to plaintiffs' contribution claim.  Finally, there is no question that this trust fund collection litigation would stray far beyond the "simplified" litigation favored by public policy if Drive's conversion claim is allowed to proceed in this forum. [4] *Petric*, 2015 WL 273653, at *4.

For all of these reasons, the Court respectfully recommends that the Court strike Drive's conversion claim as improper under Rule 13.

### B.    Drive's Third-Party Claim for Conversion against Guel is Improper Under Rule 14.

Rule 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed.R.Civ.P. 14(a).  "The 'distinguishing characteristic of a claim brought under Rule 14(a) is that the defendant is attempting to transfer to the third-party defendant the liability asserted

---

[4] Of course, nothing would prevent Drive from asserting its conversion claim against Accurate, and any other prospective defendants, in state court if plaintiffs' motion to strike is granted.

against the defendant by the other original plaintiff.'" *USA Satellite & Cable, Inc. v. Mac Naughton*, 2016 WL 3181704, at *1 (N.D.Ill. 2016), *quoting La. Firefighters' Ret. Sys. v. N. Tr. Invs.*, N.A., 2012 WL 601861 (N.D.Ill. 2012)). "Put differently, a claim under Rule 14(a), also known as impleader, 'must involve an attempt to pass on to the third party all or part of the liability asserted against the defendant.'" *USA Satellite*, 2016 WL 3181704, at *1, *quoting Ashley v. Schneider Nat'l Carriers, Inc.*, No. 12 C 8309, 2015 WL 4550126, at *4 (N.D.Ill. July 23, 2015).

Any party may move to strike a third-party claim, and "the court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim." *Dixon v. Caesars Ent. Corp.*, No. 21 CV 1673, 2022 WL 3445764, at *1 (N.D.Ill. Aug. 17, 2022), *quoting* Fed. R. Civ. P. 14(a)(4) (advisory committee's notes, 1963 amend.). When evaluating a third-party complaint, the Court must accept as true the well-pleaded factual allegations of the third-party complaint and draw all reasonable inferences in favor of the non-moving party, i.e., Drive. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019)

Here, a proper third-party complaint by Drive against Guel would allege that *if* Drive were to lose the original suit for unpaid contributions under the CBA, "then [*Guel*] is responsible for all or part of [Drive's] liability to plaintiff[s]." *Covington Specialty Ins. Co. v. U.S. Venture, Inc.*, No. 20 C 6177, 2021 WL 1428474, at *4 (N.D.Ill. Apr. 15, 2021). Drive has made no such allegation. Instead, again focusing on plaintiffs' allegation that $2 million in Drive's checks were deposited into Accurate's bank accounts, Drive attempts to imply that the relatedness of the issues alone supports its claim. But this is insufficient for a third-party claim under Rule 14, which "must involve an attempt to pass on to the third party all or part of the liability asserted

against the defendant.'" *USA Satellite*, 2016 WL 3181704, at *1; *Covington Specialty*, 2021 WL 1428474, at *4 ("The fact that the third-party claims arose out of the same transaction or set of facts is irrelevant, since impleader cannot be used as a way of combining all controversies having a common relationship.") (internal quotation marks omitted); *CNH Cap. Am., LLC v. Se. Aggregate, Inc.*, No. 608CV027, 2009 WL 1759572, at *2 (S.D.Ga. June 18, 2009) ("Rule 14(a) does not allow the defendant to assert a separate and independent claim *even though the claim arises out of the same general set of facts as the main claim.*") (emphasis in original).

      As explained above in the context of Rule 13, while plaintiffs seek payment for Drive's unpaid contributions under ERISA pursuant to the CBA for Drive's *union* jobs, Drive has in turn alleged that third-parties Guel (and Cortez) converted over $2 million from Drive to ultimately pay for work on *non-union*, non-*Drive* side jobs. Such an unlawful conversion – even if accepted as true – would not create any liability by Guel to Drive in the event that Drive is found liable to plaintiffs for its failure to pay contributions to plaintiffs for its carpenters' work on the union jobs. Where, as here, Drive has not alleged that Guel (or Cortez for that matter) are or may be liable to Drive for all or part plaintiffs' claim for unpaid contributions, Drive's claim fails under Rule 14. *Covington Specialty*, 2021 WL 1428474, at *4 (dismissing third-party complaint where the third-parties did "not face any risk of liability to plaintiff"); *Metro. Life Ins. Co. v. Cronenwett*, 162 F.Supp.2d 889, 899–900 (S.D.Ohio 2001) (striking third party claim that did not seek to hold the third-parties responsible for any liability defendant incurred to plaintiff).

      In reaching this conclusion, the Court notes that plaintiffs and Drive cite the same cases, which each side vehemently contends support their position in the context of Rule 14. After careful review, the Court finds that plaintiffs have correctly interpreted these cases. In particular, the cases stand for the following propositions:

- ***Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.***, 299 F.3d 643, 650 (7th Cir. 2002): Here, a plaintiff power company brought a claim against the landowner of a canal to enforce a contract to keep the canal in good repair. The landowner filed a counterclaim for rent due, *and* - after the canal wall collapsed – the landowner attempted to assert a third-party claim against the former power company that "*may have contributed to the collapse of the wall*." The Seventh Circuit held it was an abuse of discretion for the Court not to allow that claim under Rule 14 because the former power company may have faced liability to the defendant landowner in the event that the defendant landowner was liable to the plaintiff.

- ***Brown v. Club Assist Rd. Serv. U.S., Inc.***, No. 12-CV-5710, 2015 WL 13650775, at **1-6 (N.D.Ill. Mar. 13, 2015): Here, plaintiffs, a group of emergency road service drivers, brought claims for unpaid wages against their employer. At issue, *inter alia*, was whether the drivers were hourly employees entitled to those wages or independent contractors**.** In turn, the employer asserted a third-party complaint against service delivery companies ("SDCs") created by some of the drivers, alleging that the SDCs agreed to indemnify the employer for claims related to compensation. The Court allowed the employer's third-party claims for breach of contract and indemnification against the SDCs to stand, recognizing the employer's theory – which may ultimately fail – that "if Plaintiffs establish that they are entitled to minimum or overtime compensation, then Defendant is entitled to indemnification from the SDCs under the service delivery agreements."[5]

- ***United States v. Joe Grasso & Son, Inc.***, 380 F.2d 749, 750-52 (5th Cir. 1967): Here, a shrimp boat company ("Grasso") sought a refund from the Government for federal employment taxes. Each boat is operated by a captain and two crewmen, and the employment taxes were assessed against Grasso on the ground that it was the employer of the fishermen. In response to Grasso's request for a refund, the Government filed a third-party complaint against the captains alleging "that if Grasso were able to put in issue facts proving that it was not the employer of the fishermen, then the same facts would demonstrate the liability of the captains for the taxes." There was no derivative liability alleged. The 5th Circuit affirmed the dismissal of the third-party complaint under Rule 14 because there was a distinct possibility that the crew members were not the employees of either the owners or the captains. Thus, because the liability for the taxes was not an "either/or" proposition with respect to Grasso (the owner) and the captains, impleader under Rule 14 was inappropriate.

---

[5] Because the *Brown* Court found these claims to be proper under Rule 14, only then did the Court allow the employers additional third-party claims "even if they [were] not derivative of Defendant's liability in the original action" pursuant to Federal Rule of Civil Procedure 18(a).

In sum: Drive has misconstrued the holdings of these cases. Like plaintiffs, the Court agrees that they support the Court's finding that Drive's claim against Guel is not a proper third-party claim under Rule 14 given that Drive has not alleged that Guel may be liable to Drive for all or part plaintiffs' claim for unpaid contributions.

For all of these reasons, the Court respectfully recommends that the Court strike Drive's conversion claim as improper under Rule 14.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the District Court grant plaintiffs' motion to strike Drive's third-party complaint, (Dckt. #226), which was joined by Accurate, (Dckt. #241), and Guel, (Dckt. #234). Drive has fourteen (14) days from the date of service of this Court's Report and Recommendation to file objections with the District Court. *See* Fed.R.Civ.P. 72(b)(2); 28 U.S.C. §636(b)(1). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).


**DATE:**      **June 30, 2023**




**Jeffrey I. Cummings**
**United States Magistrate Judge**

14