**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TRUSTEES OF THE CHICAGO** | ) | |
| **REGIONAL COUNCIL OF** | ) | |
| **CARPENTERS PENSION FUND, et al.,** | ) | |
| | ) | **No 19-cv-2965** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Jeffrey I. Cummings** |
| **v.** | ) | |
| | ) | |
| **DRIVE CONSTRUCTION, INC. and** | ) | |
| **ACCURATE CONSTRUCTION, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is plaintiffs' motion to enforce the oral settlement agreement and for sanctions, (Dckt. #348), defendants' responses thereto, (Dckt. ##353 & 354), and plaintiffs' reply, (Dckt. #359). Plaintiffs request that the Court: (1) enforce the essential payment terms agreed to by the parties at the November 2023 settlement conference; (2) impose sanctions against defendant Drive Construction, Inc. ("Drive") for its deliberate delay in completing the expedited audit;[1] and (3) award plaintiffs' attorney's fees and costs against both defendants for having to bring the motion to enforce.

For the reasons set forth below, the Court grants plaintiffs' motion to enforce the oral settlement agreement on the terms the parties set forth and agreed to on the record at the conclusion of the November 29, 2023 settlement conference. In addition, the Court reserves ruling on the question of whether sanctions should be imposed on Drive for its delay in

---

[1] In particular, plaintiffs seek: (1) the amount of interest that should have been paid had the audit been completed and resolved within six months of the settlement conference and additional interest for any future delay caused by Drive; (2) an award of attorney's fees and costs related to the expedited audit from the date of the settlement conference to the present; and (3) an award of Legacy Professional's fees and costs related to the expedited audit.

completing the expedited audit pending the completion of that audit. Per the parties' November 26, 2024 joint status report, (Dckt. #358), it appears that the expedited audit will be completed once plaintiffs and Drive resolve their dispute regarding the five Drive subcontractors who are referenced in this latest status report. Finally, the Court denies plaintiffs' request for an award of attorney's fees and costs in connection with bringing this motion to enforce.

## I.     BACKGROUND

The Court presumes familiarity with the detailed factual background of this litigation, and it includes only those facts that are necessary to resolve the motion presently before the Court.

Plaintiffs are jointly administered benefit funds created under collective bargaining agreements between the Chicago Regional Council of Carpenters ("Union") and various associations and employers in the construction industry. Plaintiffs initially brought this action against Drive, a party to one such collective bargaining agreement ("CBA"), alleging that Drive failed to make proper contributions as required by the CBA in violation of the Employee Retirement Income Security Act, 29 U.S.C. §1132. Ultimately, plaintiffs filed a second amended complaint, (Dckt. #190), adding claims against defendant Accurate Construction, LLC ("Accurate") under an "alter ego and/or single employer" theory.

On November 29, 2023, the parties participated in a settlement conference with this Court. Plaintiffs, Drive, and Accurate were represented at the conference by both counsel and representatives with full authority to resolve the case. Following a full afternoon of negotiations, the parties reached a settlement agreement and – as is this Court's practice – the material terms of the agreement were placed on the record and transcribed by the Court's Official Court Reporter. As reflected in the transcript, (Dckt. #328), the terms of the agreement between

plaintiffs and defendants were first stated on the record by plaintiffs' counsel, Karen M. Rioux,

as follows:

> **MS. RIOUX:** It is the plaintiffs' understanding that the parties have agreed to settle for a total of $1 million and a release of claims against Accurate and Drive. The $1 million will be paid over a six-year time period. Gerardo Cortez personally guarantees the payment. That personal guarantee is good for four years. The payments will include an interest rate locked in at three points over the prime interest rate. Today's prime interest rate is 8.5 percent. And interest will be compounded annually. The release of claims will include an audit of -- an audit to be conducted from the period of -- October, 2021, through the present. This will be an expedited audit. And, at the time of the completion of that audit and the resolution of any discrepancies in the current audit, the $110,000 down payment on the settlement will be made. And any discrepancies will be resolved between the parties. The parties have also agreed to a non-admissions clause.
>
> . . .
>
> In the event of a default . . . defendants will owe 1.5 million. There will be a cure period. If a payment is missed, the plaintiffs will notify defendant of the missed payment and defendant will have a period of time to cure. And the terms of the cure period and the limitations on that will be worked out between plaintiffs' counsel and defense counsel.

(Dckt. #328 at 2-4).

After an exchange regarding the submission of quarterly accounting statements, counsel

for Drive, Jeffrey Fowler, added "a couple clarifications" to the record, as follows:

> **MR. FOWLER:** The down payment would be thirty days after there is a resolution -- excuse me -- of the supplemental audit -- the expedited audit to be done.
>
> **MS. RIOUX**: Correct.
>
> **MR. FOWLER**: And that down payment would come 50,000 from Accurate and 60,000 from Drive.
>
> **MS. RIOUX**: Okay.
>
> **MR. FOWLER:** I want to be clear that there would be a release of all claims in the complaint and any claims against Drive and Accurate up through the date of the dismissal.

**MS. RIOUX:** Correct. Ending -- are you talking about two releases, though? So, the release date will be through the date of dismissal, pending the expedited audit?

**MR. FOWLER:** I would think that –

**THE COURT:** Well, the case will remain open. I will keep the case open. I will stay all deadlines through the period of your expedited audit.

(*Id*. at 5-6). When asked how long the parties expected the expedited audit to take, plaintiffs'

representative estimated between three to six months. (*Id*. at 6-7).

Counsel for Drive then added:

**MR. FOWLER:** There would be no prepayment penalties. And if you -- I am not sure if you mentioned a non-admissions clause? Yes, you did. I am sorry.

**MS. RIOUX:** Agreed, yes.

**MR. FOWLER:** And, lastly, is there is an agreement -- it probably won't be in the document because, hopefully, it will have occurred before then, but counsel for each of the parties, along with [Drive's representative] Mr. Cortez will meet to discuss any concerns about what can be done to prevent interference with Drive's business opportunities in the future.

**MS. RIOUX:** Yes. The Union has agreed to meet.[2]

**MR. FOWLER:** Okay. And I think that is it.

(*Id*. at 7).

Counsel for Accurate, Luke Casson, then chimed in with "one item," as follows:

**MR. CASSON:** Just so that we are clear, Accurate is going to make a payment for $50,000 and receive a release upon payment of that.

**THE COURT:** I think that is correct because the audit will have been worked out by that point. And, so, the plaintiffs will be in a position to give a release at that point.

---

[2] Approximately a week after the settlement conference, the Union – which is not a party to this litigation – published an article in its newsletter, which defendants maintain "contained false and misleading information concerning the Settlement which has interfered with Drive's business opportunities." (Dckt. #332 at 1 & #333 at 1). Although the Union's article predictably inflamed tensions between the parties, there is no dispute that the Union and the parties did ultimately have a meeting in April 2024 to discuss Drive's concerns of business interference.

**MR. CASSON:** Agreed?

**MS. RIOUX:** Agreed.

**MR. FOWLER:** I think that is the terms of the agreement that we will be working on and preparing a more comprehensive document for, but those are the essential terms.

(*Id*. at 7-8).

The Court then asked the client representatives to step up to the podium and the

following exchange ensued:

**THE COURT:** Mr. Conklin, is the agreement that has been outlined by counsel acceptable to the plaintiffs?

**MR. CONKLIN:** Yes, it is.

**THE COURT:** Okay. And, Ms. Byrne, could you state your full name for the record?

**MS. BYRNE:** Kelly Kathleen Byrne.

**THE COURT:** Okay. Ms. Byrne, is the agreement acceptable to Accurate -- the defendant Accurate?

**MS. BYRNE:** Yes, your Honor.

**THE COURT:** Okay. And, then, finally, Mr. Cortez, state your full name.

**MR. CORTEZ:** Gerardo Cortez.

**THE COURT:** And is the agreement acceptable to Drive?

**MR. CORTEZ:** Yes, sir.

**THE COURT:** Okay. Thank you very much.

(*Id*. at 8-9).

With that, the settlement conference concluded, and the Court entered a minute order

confirming that "[p]laintiffs, defendant Accurate Construction LLC, and defendant Drive

Construction reached a settlement agreement to resolve this matter on the terms stated on the record." (Dckt. #322). The Court further directed parties to "file a joint status report on their efforts to memorialize the settlement agreement in writing by 2/28/24." (*Id.*).

Both plaintiffs and defendants stand by their position that the parties reached an oral agreement at the settlement conference to settle the claims in this lawsuit. (*See* Dckt. #353 at 1 (reflecting Drive's express acknowledgment that "the Parties reached an agreement to settle the pending claims" at the November 29, 2023 settlement conference); (Dckt. #354 at 1 (expressing Accurate's concurrence that the parties "reached an agreement to settle and the essential terms of the agreement were stated on the record.")). Unfortunately, the parties' efforts to memorialize the agreement in writing and complete the expedited audit have not come to fruition despite the Court's assistance and prodding.

Plaintiffs have taken the laboring oar in preparing drafts of a proposed written settlement agreement. Drive takes issue with plaintiffs' purported attempts to inject *new* material terms into the written drafts of the settlement agreement. Drive further maintains that it has acted in good faith since the conference and cooperated fully in the expedited audit process and in conferring regarding the written agreement. For its part, Accurate asserts that because the Union published the misleading newsletter article and then delayed the agreed upon meeting regarding defendants' concerns for months, "the terms of the agreement need to be renegotiated to account for such harm suffered at the consequence of Plaintiffs and the Union." (Dckt. #354 at 4). Accurate also asserts that the draft written agreement mistakenly indicates that it is jointly and severally liable for the entire settlement sum ($1 million) rather than liable solely for its $50,000 portion of defendants' $110,000 down payment.

## II.     ANALYSIS

"[A] district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *First Am. Bank v. Cardinal Res., LLC*, No. 13 C 3317, 2015 WL 2183145, at *3 (N.D.Ill. May 8, 2015), *quoting Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). Under Illinois law, oral settlement agreements are enforceable if "there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007); *see also TRT Transp., Inc. v. Aksoy*, 506 Fed.Appx. 511, 513 (7th Cir. 2013) ("Illinois law governs whether the parties reached an enforceable agreement."). The meeting of the minds "need not encompass every single element of the settlement; rather, there must be a 'meeting of the minds on all material terms.'" *Janikowsi v. Cook Cnty., Illinois*, No. 13 C 7006, 2019 WL 13156714, at *2 (N.D.Ill. June 27, 2019), *report and recommendation adopted sub nom. Janikowski v. Laskero*, No. 13-CV-07006, 2020 WL 13133423 (N.D.Ill. May 19, 2020), *quoting Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001); *see also Singleton v. Amita Health*, No. 17 C 4514, 2018 WL 6445161, at *2 (N.D.Ill. Dec. 10, 2018), *aff'd*, 799 Fed.Appx. 942 (7th Cir. 2020) ("An agreement is enforceable if the essential terms are sufficiently definite and certain that a court can ascertain the parties' agreement from the stated terms and provisions."). "Whether there was a meeting of the minds depends on the parties' objective conduct, not their subjective beliefs." *Janikowsi*, 2019 WL 13156714, at *2.

### A.     Plaintiffs and defendants reached an enforceable settlement agreement at the settlement conference with the Court on November 29, 2023.

On the instant record, there can be no dispute – and, in fact, there is no genuine dispute – that the parties reached an enforceable agreement at the November 29, 2023 settlement conference. As outlined above, in the presence of the Court and the parties – all of whom were

represented by counsel – plaintiffs' counsel first placed each of the material terms of the agreement on the record, namely: the monetary amount (including the interest rate and the total amount of the down payment); the six-year timeline for payment; the personal guaranty of Gerardo Cortez; the requirement for the completion of the expedited audit before payment kicks in; a non-admissions clause; and what happens in the case of default.

Counsel for all parties were then given the opportunity to clarify or add any additional terms to the record, at which point the parties added and clarified terms related to the deadline for the down payment (thirty days after completion of the audit); each defendants' respective portion of the down payment ($50,000 from Accurate and $60,000 from Drive); the specific timing of the releases; no pre-payment penalties; and a meeting between counsel for the parties, Drive's representative, and the Union. All of these terms were definite and certain. *See Dillard*, 483 F.3d at 507 ("The essential terms must be 'definite and certain' so that a court can ascertain the parties' agreement from the stated terms and provisions.").

After the definite and certain material terms were placed on the record, the Court asked each party's representative whether they agreed to the terms of the agreement. Each representative agreed on the record without hesitation or limitation. And, although the parties – and the Court – anticipated the parties would memorialize their agreement in writing, none of the parties conditioned their acceptance of the oral agreement on a written agreement, or any other conditions for that matter. *See Harmon v. Wisconsin Reg'l Training P'ship*, 833 Fed.Appx. 1, 4 (7th Cir. 2020) ("The parties' mere anticipation of a written document did not nullify their otherwise binding oral agreement.") (citing *Beverly v. Abbott Labs.*, 817 F.3d 328, 334 (7th Cir. 2016)); *Love v. Illinois Bell*, 210 Fed.Appx. 516, 518 (7th Cir. 2006) ("[O]ral agreement to settle

is enforceable . . . unless a party conditions its acceptance on the execution of a written agreement.").

Accordingly, because plaintiffs' and defendants had a meeting of the minds as to the material terms of the agreement, the oral settlement agreement reached at the November 29, 2023 settlement conference is enforceable. *See Dillard*, 483 F.3d at 509 (affirming order enforcing oral settlement agreement where parties "had a meeting of the minds on all material terms essential to their settlement"); *Livingstone v. DeVry Univ.*, No. 20 C 5567, 2021 WL 3027025, at *6 (N.D.Ill. Feb. 26, 2021), *report and recommendation adopted sub nom. Livingstone v. DeVry Univ.*, *Inc.*, No. 20-CV-05567, 2021 WL 2328363 (N.D.Ill. June 8, 2021) ("The Court's transcription in this case memorializes that at the settlement conference, there was an offer and acceptance of the compromise, and a meeting of the minds as to the material terms of a settlement agreement.").

To be crystal clear, the terms of the agreement as placed on the record on November 29, 2023 are as follows:

- The parties agree to settle this matter for a payment of $1 million to be paid over six years, in exchange for a release of plaintiffs' claims against defendants Drive and Accurate.

- Gerardo Cortez personally guarantees the payment, and the personal guarantee is "good for four years."

- The payments will include an interest rate locked in at three points over the prime interest rate and interest will be compounded annually.

- The parties agree to conduct an expedited audit for the period between October 2021 through the present.

- Within thirty days of the completion of the expedited audit and the resolution of any discrepancies (which will be resolved between the parties), the $110,000 down payment towards settlement is due. Drive will pay $60,000 and Accurate will pay $50,000 towards the down payment.

- Upon Accurate's payment of $50,000 towards the down payment, Accurate will receive a release.[3]

- There are no pre-payment penalties.

- The agreement includes a non-admissions clause.

- On a quarterly basis, Drive and Accurate, if applicable, will provide quarterly financial records (i.e., "reports to Unemployment or IRS") to the plaintiffs.

- In the case of default, there is an acceleration clause and $1.5 million becomes due. In terms of the acceleration clause, plaintiffs will exercise discretion in judgment if there are compelling business circumstances that cause a delay in payment from Drive.

- Counsel for the parties, along with Mr. Cortez, agree to meet with the Union to discuss any concerns about potential interference with Drive's business opportunities.[4]

The Court expects the parties will proceed in good faith and fully comply with the terms of their enforceable settlement agreement. Of course, failure to comply with the terms of this agreement may subject the non-compliant party to further litigation via a breach of contract

---

[3] At a hearing before the Court on October 24, 2024, counsel for plaintiffs and counsel for Accurate raised their ongoing dispute regarding whether Accurate was jointly and severally liable under the parties' settlement agreement. At that hearing, the Court recited the portion of the hearing transcript from the settlement conference in which plaintiffs' counsel stated that "In the event of a default . . . defendants will owe 1.5 million" as potential evidence of joint and several liability. However, as described above, the full hearing transcript reveals that counsel for Accurate, Luke Casson, sought and received further clarification on this issue at the settlement conference when he expressly asked on the record if Accurate would receive a release upon its payment of $50,000 portion of the downpayment and plaintiffs' counsel expressly agreed. (Dckt. #328 at 6).

[4] Accurate's contention that defendants are entitled to renegotiate the terms of the agreement based on the Union's conduct in publishing a misleading article after the settlement conference lacks merit for three reasons. First, the Union is neither a party to this litigation nor a signatory to the settlement agreement itself. Accurate cites no authority that would permit defendants to renegotiate the terms of an otherwise enforceable settlement agreement based on the post-agreement conduct of a non-party. Second, even if the Court attributed the Union's purported bad faith conduct to *plaintiffs*, there would still be no basis to vitiate the otherwise binding settlement agreement. *See, e.g., Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010) ("Post-acceptance conduct does not retract an earlier acceptance."). Finally, there is no dispute that the agreed upon meeting between the Union and the parties *did* take place, albeit later than Accurate would have liked.

claim in a court of competent jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").

  **B.**  **The Court reserves ruling on plaintiffs' request for sanctions against Drive.**

  Plaintiffs request that the Court impose sanctions against Drive for its delay in the expedited audit process. As the parties acknowledge, a "district court may impose sanctions under its inherent authority 'where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018), *quoting Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012). In doing so, the court must first make a finding of "bad faith, designed to obstruct the judicial process, or a violation of a court order." *Tucker*, 682 F.3d at 662.

  However, "[t]he mere fact that an action is without merit does not amount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). "Rather, the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* (cleaned up). "Examples of 'something more' include: a finding that the plaintiff filed the suit for purposes of harassment or delay, or for other improper reasons, . . . or a finding that a party was delaying or disrupting the litigation or hampering enforcement of a court order." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)) (cleaned up with emphasis added). "When findings of bad faith are properly made, district courts have inherent authority to award attorneys' fees as a sanction." *REXA, Inc. v. Chester*, 42 F.4th 652, 672 (7th Cir. 2022) (citing *Chambers v. NASCO, Inc.*, 501 U.S. at 45-47).

Here, plaintiffs assert that Drive deliberately dragged its feet when taking the actions necessary to complete the expedited audit and thereby delayed the disposition of this five-year-old case given the Court's agreement that it would keep this case open until the expedited audit is completed. (Dckt. #328 at 7). It is certainly clear that the resolution of the expedited audit has taken significantly longer than the six months that plaintiffs' counsel estimated at the conclusion of the settlement conference. (*Id.* at 8). The Court is also cognizant of the fact that defendants' duty to make their downpayment under the settlement does not kick in until the expedited audit is completed. Nonetheless, it is less clear on the present record whether Drive's alleged foot dragging has been sufficiently egregious to constitute the type of bad faith that warrants the imposition of sanctions. At a minimum, Drive has participated in the audit process by providing documents and complying with the Court's orders related thereto. Furthermore, the parties appear to be on the cusp of reconciling the issues related to the five Drive subcontractors, and it is the Court's understanding that the expedited audit will be completed once this occurs.

In consideration of the above, the Court will reserve ruling on plaintiffs' request for sanctions until the expedited audit is completed. Any unwarranted delay by Drive in taking the steps necessary to finalize the audit and resolve the remaining disputes (including responding to plaintiffs' recent records request pursuant to Article III, Sections 3.4 and 3.5 of the CBA, (Dckt. #358 at 2-3)) could tip the balance in favor of plaintiffs and against Drive with respect to the imposition of sanctions. *See, e.g., Metz*, 655 F.3d at 491 (affirming district court's sanction award for, among other things, conduct that caused needless delays); *Valdez v. Kismet Acquisition, LLC*, 474 B.R. 907, 917–19 (S.D.Cal. 2012), *aff'd sub nom. In re Icenhower*, 567 Fed.Appx. 517 (9th Cir. 2014) (affirming the bankruptcy court's award of sanctions where a party "raised objections . . . with the primary purpose of causing delay."). The parties are

12

ordered to file an updated joint status report regarding the expedited audit on or before the close of business on December 20, 2024.

### C. Plaintiffs' request for an award of their attorney's fees and costs in connection with the filing of this motion is denied.

Lastly, plaintiffs seek an award of the attorney's fees and costs incurred in filing the motion to enforce based on defendants' delay in memorializing the parties' settlement agreement in writing. This request is denied for the following reasons.

First, although plaintiffs' counsel expressed an intention to prepare a more comprehensive (and presumably) written agreement at the November 29 hearing, (Dckt. #328 at 8), plaintiffs did not condition their agreement to settle this case on the parties' execution of a written settlement agreement. Thus, although it is customary to memorialize the terms of a settlement in a written document, doing so was not a condition of settlement that plaintiffs were entitled to insist on. Second, it does not appear that it was necessary to file this motion to enforce given both defendants' agreement that the Court should enforce the parties' oral settlement agreement based upon the terms articulated on the record at the November 29 hearing. Plaintiffs' counsel could have requested that the Court enter an order enforcing the parties' oral settlement agreement in one of the written joint status reports or at one of the status hearings, and the Court would enter such an order without objection. Finally, Accurate had a legitimate objection to plaintiffs' proposed inclusion of a term in the written agreement that it would be jointly and severally liable for payment of the entirety of the $1 million settlement since it actually agreed to pay only $50,000 of the $110,000 downpayment.[5]

---

[5] The Court remains puzzled as to why Accurate's counsel did not refer plaintiffs and the Court to the portion of the November 29 transcript where he sought (and received) clarification that Accurate would receive its release after it paid its $50,000 portion of the downpayment. Taking this simple step would have avoided much confusion on the issue of joint and several liability.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to enforce the oral settlement agreement, (Dckt. # 348), is granted as outlined above and the Court reserves its' ruling on plaintiffs' request for sanctions.  The Court expects the parties will now focus their efforts on the completion of the expedited audit and bringing this litigation to its close.  By December 20, 2024, the parties shall file a joint status report regarding the status of the expedited audit.


**DATE: December 13, 2024**


**Jeffrey I. Cummings**
**United States Magistrate Judge**